In re MEYER et al.

(District Court, E. D. New York. February 16, 1901.)

BANKRUPTCY—RIGHT OF SET-OFF—PAYMENT TO GENERAL ASSIGNEE THROUGH MISTAKE.

An insolvent firm made a general assignment, and afterwards, on the same day, gave its check to the assignee for the amount to its credit in bank. The bank, in ignorance of the assignment, issued its duebill for the amount, payable through the clearing house, but afterwards, learning the facts, proposed to stop payment, and it was stipulated that the amount should be placed on deposit subject to the bank's rights, to be there-

after determined. The bank held unmatured notes of the firm for an amount in excess of the deposit. The firm was subsequently adjudged a bankrupt, and the estate came into the hands of its trustee. *Held* that, as the bank was misled into issuing its duebill on the check of a depositor who no longer had title to the fund, it was entitled to a restoration of the money, and to hold the same under the bankruptcy act as an offset to the notes of the bankrupt, although it would not have been entitled to so hold it as against the assignee under the laws of the state, since the assignment was in itself an act of bankruptcy, which gave the bank the right to have the estate administered in a court of bankruptcy.

In Bankruptcy. On petition of the Central National Bank of Philadelphia.

Roosevelt & Kobbe and Edward L. Perkins, for petitioner.

Strong & Cadwalader (Mr. Cargill, of counsel), for trustee.

F. W. & A. E. Hinrichs, for creditors.

THOMAS, District Judge. The firm of Meyer & Dickinson made a general assignment to Charles W. Sparhawk on August 19, 1898, and on April 11, 1899, the firm was adjudicated a bankrupt upon a petition filed in this court upon December 16, 1898. After the assignment, and on the day thereof, the firm drew its check to the order of Charles W. Sparhawk, assignee, for the payment of $9,012.97, the balance of the assignor's funds on deposit with the Central National Bank of Philadelphia. At the time the bank held unmatured paper of the firm to the amount of $40,000. The bank paid the check without knowledge of the assignment, or of the payee's relation to the assigned estate, by giving the following duebill:

"Central National Bank.

"Philadelphia, Aug. 20, 1898

"To Banks,
"Nine thousand * * * hundred and twelve 97/100 dollars.
"9,012.97.
"[Sgd.]                                    E. R. Winner, Teller.
"Number 22006.
"Countersigned:
"[Sgd.]                         William Post, 2d Asst. Cashier.

"This duebill is only good when signed by one and countersigned by another authorized person, and is payable only in the exchanges through the clearing house the day after issue."

The assignee, by indorsement, transferred the duebill to the Fidelity Insurance, Trust & Deposit Company of Philadelphia, for the purposes of deposit, and in due course it should have been paid through the clearing house. Shortly after the hour of receiving the duebill, the assignee advised the claimant's officer of the assignment, and thereupon the latter demanded the return of the duebill, on the ground that it had been delivered upon a misapprehension of fact, and threatened to stop the payment thereof. This controversy led to an arrangement by which the check should be paid, and that the parties should be governed by the following stipulation:

"It is agreed that the proceeds of the check dated August 19, 1898, of Meyer & Dickinson, on the Central National Bank, for nine thousand and twelve and 97/100 ($9,012.97) dollars, in favor of Charles W. Sparhawk, assignee (Central National Bank raising a question with regard to the right of the

payee to receive or retain said amount); shall be placed on special deposit, to be represented by certificate of deposit, and be held by Charles W. Sparhawk as a separate fund to await the determination of the right of the bank to said fund, or any part thereof.

. "Philadelphia, August 22, 1898.

"[Sd.]      Theo. Kitchen,
"Cashier Central National Bank.
"John Sparhawk, Jr.,
"Attorney for Charles W. Sparhawk, Assignee."

The case is clear. The bank delivered to the assignee its duebill upon a check drawn by the firm after it had no title to the fund, upon the belief that the assignor still owned the fund. Only the owner of the fund had the right to request its payment, and the bank was obliged to pay only upon a demand by the actual owner. It is true that the indorsement of the check and receipt of the duebill by the assignee protected the bank against the latter, but it did not apprise, and was calculated to conceal from, the bank the fact that its depositor and debtor had made an assignment, and was probably insolvent, and that it was asked to make payment upon the check of a drawer who had no longer title to the fund. This deprived the bank of the opportunity to decline recognition of the title of the assignee, and to hold the fund for distribution or disposition in a court of bankruptcy, which court would take jurisdiction of the fund upon proof that the assignment had been made. The bank had a right to know, and to select its own course of action and means of self-protection. It was deprived of that right by means of a check drawn by a depositor who no longer had a right to draw it, payable to the order of an assignee, whose relation to the drawer was concealed, and whose very appointment authorized this court to extend its jurisdiction to, and decree the detention of, the fund by the bank as an offset to the assignor's indebtedness. This court is unwilling to retain the fund upon such state of fact, and approves the finding of the master that the money, with the interest accrued thereon, should be returned to the bank, to be held as an offset to the assignor's notes. In reaching the above conclusion, the law of Pennsylvania, which would have precluded the bank from offsetting the deposit against its unmatured notes, has not been disregarded; and, had the money been paid voluntarily, or upon suit brought, or after judgment against the bank, or with a proper understanding that the payment was made to the assignee of the firm, this court would not seek to undo what had been done openly, consciously, and pursuant to law. But the difficulty here is that the payment was obtained in no one of these ways. The bank is entitled to be reinstated in its former place of advantage. Meanwhile the bankruptcy proceedings have intervened, and another and different rule of set-off applies.