KENDRICK STATE·BANK v. FIRST NAT. BANK OF PORTLAND.

.(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2347.

BANKS AND BANKING (§ 134*)—INSOLVENT BANK—DEPOSITS IN DEFENDANT
BANK—SET-OFF—NATURE OF INDEBTEDNESS.

Plaintiff state bank, being largely owned by B., who was its president, and members of his family, was indebted to defendant bank on a certificate of deposit, which, having matured, B. requested defendant to cancel in exchange for B.'s note secured by certain certificates of stock of plaintiff bank, in order that the amount might not appear as a liability of plaintiff bank in its reports to the state bank commissioner. This having been acceded to, the loan was carried in this form, and later increased to $10,000, secured by similar additional stock, in which form it remained until plaintiff bank failed. The interest on the note was paid by plaintiff bank, and defendant was instructed by B. to charge plaintiff with the amount of the note at any time it saw fit. At the time of the failure there was a balance standing to plaintiff's credit on defendant's books of $8,283.09. *Held*, that the loan was an indebtedness of plaintiff bank, and not the debt of B., and hence defendant was entitled to apply plaintiff's deposit balance on such debt.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 353–374; Dec. Dig. § 134.*

Deposits in bank after insolvency, see note to Richardson v. New Orleans Coffee Co., 43 C. C. A. 588.]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Action by the Kendrick State Bank against the First National Bank of Portland. Judgment for defendant (206 Fed. 940), and plaintiff appeals. Affirmed.

Stapleton & Sleight, of Portland, Or., and C. L. McDonald, of Lewiston, Idaho, for appellant.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for appellee.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

ROSS, Circuit Judge. We think a bare statement of the substantial facts in this case, appearing from the written correspondence of the parties and by uncontradicted oral testimony, is enough to show that the judgment of the court below should be affirmed.

The action was brought by the plaintiff in error to recover a balance of $8,283.09, claimed to be its money on deposit with the defendant, which the latter refused to repay upon demand. The record shows that the Kendrick Bank had been, for a number of years prior to the transactions in question, a correspondent of the Portland Bank—J. W. Bradbury being its president and the owner of 23,000 of the 25,000 shares of its stock, and all of the balance, with the exception of sufficient to qualify the other directors, being owned by members of his family. In June, 1910, the Kendrick Bank obtained a loan from the Portland Bank of $5,000 at 6 per cent. per annum interest, giving as security therefor a certificate of deposit in that amount, with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

certain other collaterals; the money so loaned being deposited with the Portland Bank to the credit of the Kendrick Bank. That loan was extended from time to time at the request of the Kendrick Bank. In December, 1910, the Portland Bank received from the Kendrick Bank these two letters:

"Kendrick State Bank, Kendrick, Idaho, Dec. 6, 1910.

"J. W. Newkirk, Cashier First National Bank, Portland, Oregon—Dear Sir: In reference to our C— D— due Dec. 12th for $5,000.00. Would it be possible for us to get an extension on this for six months? The collections with (us) are at a standstill, and from the outlook I am of the opinion they will continue so until another crop is harvested. We inclose our C— D— for $5,000.00 for the time asked for in case you can grant us the extension asked to replace the one you hold. We are writing you on another sheet for this to be carried in another way, with our reasons for asking for the change. Hoping you will grant us the favor of an extension, and thanking you for your many kindnesses of the past, I am,

"Very truly yours, J. W. Bradbury, Prest."

"Kendrick State Bank, Kendrick, Idaho. ·

"Kendrick, Idaho, Dec. 6, 1910.

"J. W. Newkirk, Cashier First National Bank, Portland, Oregon—Dear Sir: I am sending herewith my personal note for $5,000, with Kendrick Bank stock for the like amount attached, for your consideration. We would like to have you, in case you can grant us the extension asked in letter regarding our C— D— for $5,000 due Dec. 12, 1910, to have you take this note and pass to our credit in place of the C— D—. The reason for this is: In our statements to the state bank commissioner, which are published, we now have to publish any certificates of deposit to other banks for borrowed money as such, and in a farming community this always causes unfavorable comment and naturally hurts. I feel sure our average daily balance as we have kept it for the past few months will be kept as strong, and we want this extension more to keep our reserve in as good shape as possible. Hoping, if you can carry us for the extension, you will accept this method of loaning us this amount, and again thanking you for your great kindness of the past, I am,

"Yours truly, J. W. Bradbury, Prest."

To the foregoing letters the Portland Bank replied, through its cashier, J. W. Newkirk, as follows:

"December 7, 1910.

"Kendrick State Bank, Kendrick, Idaho—Gentlemen: Answering yours of the 6th instant, we will be pleased to make the extension referred to by you, and will accept the note in lieu of the certificates of deposit. We inclose herein for indorsement two certificates aggregating 30 shares of stock, which you may return to us after procuring the required indorsement.

"Yours very truly, J. W. Newkirk, Cashier."

That arrangement was consummated, and the loan continued, against which the Kendrick Bank drew drafts. In the early part of December, 1911, the Portland Bank, at the request of the president of the Kendrick Bank, increased the loan to the latter bank to $10,000; Bradbury, its president, executing his individual note in that amount to the Portland Bank, and also indorsing to it an additional 50 shares of the stock of the Kendrick Bank as security for the loan, all of the additional money being placed by the Portland Bank to the credit of the Kendrick Bank, and by the latter checked against from time to time. The testimony is to the effect that the loan in each instance was made by the Portland Bank to the Kendrick Bank, and

not to Bradbury individually. Such is the testimony, not only on behalf of the Portland Bank, but is the distinct testimony of Bradbury himself. The interest on the note given by Bradbury to the Portland Bank was paid by the Kendrick Bank, and the Portland Bank was instructed by Bradbury to charge the Kendrick Bank with the amount of the note at any time it saw fit.

Newkirk, the cashier of the Portland Bank, testified, among other things, as follows:

"It is not customary for banks not as a bank to issue their promissory note. This is not the only bank in the Northwest that borrows money; that is an ordinary transaction. They borrow in various ways. Sometimes they will borrow it on certificates of deposit; but if for reasons they don't want to issue their certificate of deposit, the president will give his note, or the vice president, or some of the directors will give their personal notes. Money is not loaned to banks without receiving any paper of any kind, either certificate or note. We always take something, but it is done in the way just outlined."

The uncontradicted evidence also shows that when Bradbury secured the loan from the Portland Bank, and gave his note for the $10,000, he caused a like amount to be credited to himself on the books of the Kendrick Bank, and the Portland Bank to be thereon charged with the same amount, which entries remained at the time of the failure of the Kendrick Bank about the 1st of February, 1912. Prior to that all the collateral except the bank stock held by the Portland Bank had been returned to the Kendrick Bank, and after the failure the bank stock was returned to Bradbury. Subsequently the stock was acquired from Bradbury in the process of reorganizing the Kendrick Bank, together with a check for $10,000 of the amount standing to his credit on its books; the depositors' committee turning over to him certain assets of the bank of questionable value. When the Kendrick Bank failed there was a balance standing to its credit with the Portland Bank of $8,283.09, which the latter bank thereupon took credit for and charged it against the $10,000 note Bradbury had executed to it. It is for that balance that the suit was brought by the Kendrick Bank as for moneys deposited with it subject to check or draft.

As indicated above, we think the court below clearly right in holding that the agreements in question were agreements between the two banks, and not between the Portland Bank and Bradbury as an individual, and that the Kendrick Bank should not be permitted, as against its creditor, to take advantage of the action of its president in obtaining the last loan by a method designed to suppress a full statement of the liabilities of the bank to the state bank commissioner.

The judgment is affirmed.