A. E. HOCKMAN, APPELLEE, V. ELLIOTT & MYERS, APPELLANT.

FILED DECEMBER 1, 1921.   No. 21702.

1. **Bailment.**   Under the facts in this case, the property received by the defendant from the estate represented by plaintiff as trustee in bankruptcy, for the purpose of cooling and drying the grain and putting it in condition for market, was a bailment of the property, and not a sale.

2. **Bankruptcy: SET-OFF.**   A creditor is not entitled to set off against the trustee in bankruptcy, representing the bankrupt's estate, a sum retained by such creditor representing the value of grain received by the creditor from the debtor, as a bailment, with knowledge of the debtor's insolvency, and within four months of the filing of the petition in bankruptcy.

3. ———: CONVERSION.   A bailment of grain received by the creditor, under the circumstances disclosed in this case, cannot be considered as a portion of the mutual credits and debts which a creditor is entitled to set off against the debtor.   And the act of the creditor in retaining the grain, under such circumstances,

constitutes a conversion of the grain, and the trustee in bankruptcy is entitled to recover its value for the benefit of all of the creditors of the bankrupt estate.

4. Case Distinguished. The case of *Tootle-Weakley Millinery Co. v. Billingsley*, 74 Neb. 531, is distinguished.

APPEAL from the district court for Nuckolls county: RALPH D. BROWN, JUDGE. *Affirmed on condition.*

*F. H. Stubbs,* for appellant.

*R. M. Tibbets* and *P. E. Boslaugh,* contra.

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

CORCORAN, District Judge.

In the month of August, 1917, the Superior Corn Products Company and Elliott & Myers were each quite extensively engaged in the grain business at Superior, Nebraska. Each of these firms bought and shipped grain in large quantities, at times dealing with each other, and in that way generally had a running account with each other. At the times involved herein the Corn Products Company had no elevator of its own, but had started the erection of a building for that purpose. Its business appears to have been largely buying grain and such products upon track and shipping to other markets, being probably considered in the trade as wholesale dealers. In the early part of the month of August this firm had contracts open for the purchase of corn and oats in the neighborhood of 300,000 bushels. About the 9th of August there occurred a great break in the market; corn falling in price about 70 cents a bushel and oats about 10 cents. This terrible drop in market prices brought about the financial ruin of the Corn Products Company, and on August 18 it filed its petition in bankruptcy, and was later adjudged a bankrupt. The plaintiff in this suit is the trustee in bankruptcy appointed by the bankruptcy court. On July 27 this company received a carload of oats shipped from Aurora, which, when it reached

Superior, was found to be heating and in bad condition for the market. An arrangement was made with the defendant firm, under the terms of which this car-load was turned over to the defendant to be run through its elevator, which was well equipped for the purpose, to be cooled and dried and put in condition for the market. On August 10 another car-load was received by the company from the same place and in the same condition, and was delivered to the defendant firm under the same arrangement and for the same purpose. While these two car-loads of oats were in the possession of the defendant firm, and on August 11, the Corn Products Company found itself to be hopelessly insolvent, and stopped the payment of drafts drawn upon it for grain shipped to it by its customers. Knowledge of this condition was at once sent by wire to its several customers, and on the 14th a general letter was sent by the company to all of its customers and those interested in its business, disclosing in detail the insolvent condition of the company caused by the great and sudden change in market conditions. A copy of this letter was received by the defendant firm about this time. On August 15 the defendant firm sent the Corn Products Company an account sales for the two car-loads of oats, indicating that it had purchased the two car-loads at the prevailing price and credited the Corn Products Company with the amount upon its open account with that company. The trustee claims that this was not a sale of the grain to the defendant firm, but that the defendant received the grain as bailee for the purpose of putting it in condition, and brings this suit for conversion of the two cars of grain, claiming them as an asset of the bankrupt estate. The petition also sought to recover for three other small items, which will be noticed later. This action was tried in the district court for Nuckolls county to a jury, but at the conclusion of the trial the court directed the jury to return a verdict for the plaintiff trustee for the sum of $2,574.46, which was done, and, after the overruling of

the defendant's motion for a new trial, judgment was entered upon the verdict. The defendant brings the cause to this court upon appeal.

The question presented for decision is whether the answer of the defendant and the evidence taken at the trial were sufficient to require the submission of the controversy to a jury. A careful examination of the record reveals little, if any, dispute in the evidence. Upon the main facts there is no controversy, the difference being only upon minor details, and not of a controlling nature. The defendant firm filed a claim with the referee in bankruptcy against the bankrupt estate, covering the months of July and August, the two principal items being for losses upon contracts for grain sold to the bankrupt, which it was unable to receive and pay for, amounting to $3,262.50, and a number of small items, in all amounting to $3,493.89. Against this amount the defendant credited the bankrupt with a number of small items, the two cars of oats in dispute at $2,018.51, and the items above referred to, leaving a balance of $832.49, which it asked to have allowed against the bankrupt estate. The referee allowed this amount upon condition that the oats in dispute and the items of preference be restored to the bankrupt estate. Upon a hearing in the United States district court this order was reversed, and the referee directed to allow the claim, but granting permission to the trustee to bring suit for the items here in dispute, if he was so advised by his counsel. This the trustee has done, bringing this suit for the conversion of the oats and to recover the other three items as unlawful preferences.

Counsel have favored us with very exhaustive and elaborate briefs. Many questions are argued which have little bearing upon the real issue. It is claimed by appellant that the adjudication before the referee and the bankruptcy court has foreclosed the matter and that the controversy cannot further be inquired into. Many cases are cited in support of this theory; the leading case being *Clendening v. Red River Valley Nat. Bank,* 12 N. Dak.

51. The principal question determined in that case was the question of what was adjudicated by the referee; it being claimed that certain matters necessarily involved in the litigation were not in fact adjudicated. The North Dakota court held that all such matters as were necessarily involved were in fact adjudicated. These matters can have no bearing here, where in the very order made by Judge Munger directing the referee to allow the claim, and almost in the same breath, figuratively speaking, was the permission to the trustee to prosecute this very suit. Under this state of the record the question of *res judicata* cannot be relied upon here.

The determination of the question of whether the defendant firm had a right to credit the bankrupt upon its running account with the value of the two car-loads of oats, which it has taken into its possession under the circumstances before detailed, must control and determine the decision in this case. If the defendant had such right, then the judgment of the lower court is wrong and must be reversed. If the defendant had no right to thus secure a preference in its favor, then the judgment is correct and must be affirmed. The question is purely one of law, and there was no question of fact for the jury to consider.

The different bankruptcy acts are, of course, acts of the congress of the United States. The construction placed upon these several acts by the courts of the United States must control the rights of litigants in the courts of the several states. If it is a case of mutual credits and debts it is settled by the statute, which provides that one shall be set off against the other and the balance only will be allowed and paid. *Libby v. Hopkins,* 104 U. S. 303. In the case of *Western Tie & Lumber Co. v. Brown,* 196 U. S. 502, a leading case upon the subject, it was held (25 Sup. Ct. Rep. 339), Mr. Justice White writing the opinion: "A corporate creditor is not entitled to set off, in proving its claim against the bankrupt debtor's estate, a sum retained by it with knowledge of the debtor's in-

Hockman v. Elliott & Myers.

solvency, and within four months of the filing of the petition in bankruptcy." This is the rule almost universally adhered to by the supreme court of the United States, among the leading cases being: *New York County Nat. Bank v. Massey,* 192 U. S. 138; *Hanover Nat. Bank v. Suddath,* 215 U. S. 122; *Cook County Nat. Bank v. United States,* 107 U. S. 445; *Sawyer v. Hoag,* 17 Wall. (U. S.) 610, 622. To these might be added a long line of cases to the same effect in the lower federal courts. In this connection reference is made to the opinion of Judge Munger when this controversy was before the United States district court, and it is of more than ordinary interest in this discussion:

"The claim of the trustee in this case is  *  *  *  of a conversion of property delivered by the bankrupt to the creditor as a bailment; that is, of oats delivered to be returned, and which the creditor sold for its own use. The bankruptcy act, by section 70 (a) 6, grants to the trustee the title of the bankrupt to 'rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property.' If there has been a breach of contract of bailment or conversion of property by the claimant, by reason of its dealings with the oats delivered to it by the bankrupt, the trustee may recover for the benefit of the estate the amount of its damages, and this fund would be assets for the benefit of all creditors."

If the defendant firm may retain the oats received by it as a bailment from the bankrupt, and credit the bankrupt with the proceeds upon its account, then the defendant has collected its debt against the bankrupt 100 cents on the dollar, so far as the value of the two carloads would extinguish the debt of the bankrupt to the defendant firm. Other creditors would be deprived to that extent of payment upon their demands. This is what the law, as interpreted by the supreme court of the United States, declares cannot be done.

In the case of *Tootle-Weakley Millinery Co. v. Billings-*

*ley*, 74 Neb. 531, cited and relied upon by the appellant, the court permitted an allowed claim of the plaintiff in the same bankruptcy proceedings to be offset in equity against a default judgment, peculiarly obtained, in favor of the trustee in bankruptcy. The court evidently was of the opinion that the judgment was not a *bona fide* asset of the estate, and that, under the unusual circumstances of the case, a grave wrong would be perpetrated against the plaintiff unless this was done. The proposition in the fourth paragraph of the syllabus in that case is not an authority, as applied to the facts now before us, and has no application, except in cases peculiarly calling for the interposition of a court of equity. The case is therefore distinguishable from the one now under consideration.

There is no pretense that the oats, when received by the defendant firm, were received as a purchase. The evidence is undisputed that the oats were received by the defendant as a bailment for the sole purpose of running the grain through their elevator to cool and dry the grain and put it in condition for market. The oats were still in the possession of the defendant when the crash came and the bankrupt firm was forced to the wall. The defendant had knowledge of the failing condition of the Corn Products Company on August 14, if not the week previous. Yet on August 15 they send to the bankrupt firm the account sales and attempt to close a sale of the grain to themselves, which sale had never even been contemplated between the parties. The further attempt to credit the value of the grain upon the open account with the bankrupt firm is clearly an attempt to evade or avoid the force of the bankruptcy laws. Under the circumstances shown by the undisputed evidence in the record, the transaction did not constitute a case of mutual credits and debts. It was clearly a conversion of the grain, and the trustee in bankruptcy is entitled to recover its value for the benefit of all creditors of the bankrupt estate. To this extent the order of the trial court in directing the

verdict is sustained by the law and the evidence and should be affirmed.

A different situation exists with reference to the items of $172.18 and $237.85, credited to the bankrupt on August 15, and $83.33 credited on the 23d, amounting with interest at the time of the trial to $584.19, and which items constituted the third cause of action and a part of the verdict directed to be returned. These items represented balances due the Corn Products Company from the defendant firm upon three several cars of corn sold by the Corn Products Company to the defendant at some time prior. The amounts of these balances were not known until final returns were received by the defendant firm from the market to which the grain had been shipped. The evidence does not show the dates upon which the grain in these cars was received by the defendant, but it appears that these returns were received by them shortly before August 15. The grain represented by these particular cars was received by the defendant at a time long before that firm had any knowledge of the failing condition of the Corn Products Company. And while it may be a fair inference from the evidence that this particular grain was received by them within four months of the filing of the petition in bankruptcy, still if the defendant had no knowledge of the approaching insolvency of the bankrupt, it would not constitute an unlawful preference. These items should be considered "mutual credits and debts," within the meaning of the statute. As such, the defendant would have a legal right to offset the money represented by them against the indebtedness of the bankrupt to the defendant firm. This being true, it follows that it was error to direct the verdict for this amount. The appellee probably anticipated that there was doubt about the correctness of the order of the court in this particular respect and suggested in his brief that if this court so found that, instead of reversing the judgment, it should order a remittitur of that amount. The invitation to require the

appellee to remit is accepted by the court, and, upon condition that the plaintiff below remit the sum of $584.19 from the verdict within 20 days from the date of this opinion, the judgment for the balance will be affirmed, but, otherwise, the judgment of the district court will be reversed. Upon the filing of this remittitur, the judgment will be

AFFIRMED.