## In re J. C. SPARKS CO.

District Court, W. D. South Carolina.

Sept. 19, 1929.

F. P. McGowan and Dial & Todd, all of Laurens, S. C., for petitioners.

Hughes & Russell, of Union, S. C., for trustee.

GLENN, District Judge.

This case comes before the court on certificate to review the denial by the referee of the petition of M. S. Bailey & Son, bankers, who asked the court to allow them to offset a note of J. C. Sparks Company, the bankrupt, for $2,000 against a deposit in the said bank of a like sum.

The facts underlying the controversy are undisputed. J. C. Sparks Company is a corporation organized under the laws of South Carolina, having its principal place of business at Union in said state, and having other places of business at Clinton, in Laurens county, S. C., and elsewhere in said state. On January 1, 1929, J. C. Sparks Company borrowed $2,000 from M. S. Bailey & Son, bankers, and on that day executed its note for that amount payable to said bankers 90 days after date. At that time the said J. C. Sparks Company had a general checking account in petitioners' bank at Clinton which appears to have been an active one for some time prior and after the making of the said loan and note. The said loan and note were made in the ordinary course of business. On the 27th day of February, 1929, certain dissatisfied stockholders of J. C. Sparks Company instituted a proceeding in the state court for Union county seeking the appointment of a receiver for the assets of said corporation, and J. Raymond Flynn was duly appointed receiver of said corporation, and on March 1, 1929, qualified as such and entered upon the discharge of his duties, and as such receiver proceeded to take charge of all corporate assets. On March 2, 1929, he notified petitioners herein of his appointment and qualification as receiver, and further that he would soon thereafter make draft upon them for the amount of the balance in petitioners' bank to the credit of J. C. Sparks Company amounting to more than $2,200. On the 4th of March, 1929, M. S. Bailey and Son, bankers, filed their petition in the state court in the receivership proceeding, and obtained from Hon. Thos. S. Sease, judge of the court of common pleas for Union county, an ex parte order or rule to show cause, returnable on March 8, 1929, why petitioners should not be allowed to offset the note of J. C. Sparks Company owned and held by them against the deposit of said J. C. Sparks Company in their bank. On March 8, 1929, upon return to the rule to show cause being made by the receiver, and after argument, the matter was continued in order to enable petitioners to establish their right to offset their note against the deposit before the master for Union county, and in both the rule to show cause and order continuing same the receiver was enjoined and restrained pendente lite "from drawing on, asking for, and receiving from M. S. Bailey and Son, Bankers" the bankrupt's deposit with said bank to the extent of $2,000, "until the matter shall be determined by the Court in said action whether the said M. S. Bailey & Son, Bankers

shall have the right to apply the said deposit * * * to the payment of said note," and until the further order of the court.

At the hearing before Judge Sease in the state court, the suggestion was made by the said judge that all of the deposit of J. C. Sparks Company in petitioners' bank, over and above the sum of $2,000 should be paid to the receiver, and that amount remain in the bank in said account until the determination of the right of offset. Accordingly, the receiver received from the bank the excess of the deposits.

The petition for an adjudication in bankruptcy against J. C. Sparks Company was filed in this court on March 12, 1929, and an adjudication was made thereunder on April 8, 1929, and, at the first meeting of the creditors of the bankrupt, petitioners proved their claims evidenced by the said note, and petitioned the referee, the Honorable S. E. Barron, to allow them to offset said note against the $2,000 on deposit to the credit of the bankrupt in their bank, and to direct the trustees to make said set-off in satisfaction of said claim. After taking testimony and hearing argument, the referee denied said petition, and held that the $2,000 on deposit in petitioners' bank was the property of the trustees, and the allowance of said set-off would work an unlawful preference.

The petitioners, feeling aggrieved by the order of the referee, in due time excepted thereto and filed their petition that the same be reviewed, reversed, and revised by this court, as provided for in the Bankruptcy Act, and in General Order No. 27, and that such proceedings be had as are conformable to law allowing the offset of the note against said deposit, and the matter comes before this court, as above stated, on the petitioners' petition to review the order of the referee.

It was conceded in argument by the attorneys for the trustees that the original loan and deposit was made in the due and ordinary course of business, and that the deposit was a general one, subject to check, and created the relation of debtor and creditor, and was not a deposit for a special purpose or to pay a particular debt. The president of the bank, W. J. Bailey, testified before the referee fully as to the terms of the note and conditions of the deposit. It is conceded that no inference can be drawn from his testimony or the other facts and circumstances of the case that petitioners knew, or had reason to believe, that said J. C. Sparks Company was insolvent at the time of the execution of said

note or during the continuance of said deposit. On the contrary, it clearly appears that said deposit was made in the usual course of business and possessed no special or unusual features. The note given by Sparks & Co. was made also in the ordinary course of business to mature at the end of three months, which seems to have been a reasonable credit transaction at that particular season of the year.

In considering the question before the court, it is necessary to construe or interpret certain sections of the Bankruptcy Act which are as follows:

"Section 108, USCA, title 11, page 255:

"Set-offs and counterclaims. (a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that said bankrupt was insolvent, or had committed an act of bankruptcy."

Section 103, USCA, title 11, page 19:

"Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs; * * * (3) founded upon a claim for taxable costs * * *; (4) founded upon an open account; * * * (5) founded upon provable debts," etc.

Section 96, USCA, title 11, page 336, so far as is pertinent, is as follows:

"Preferred Creditors. (a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain

a greater percentage of his debt than any other of such creditors of the same class."

Section 93, USCA, title 11, page 216:

"Proof and allowance of claims." Subdivisions a, b, c, d, e, and f are not pertinent. G is as follows:

"The claims of creditors who have received preferences, voidable under section 96, subdivision (b), of this title, or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section 107, subdivision (e), of this title, have been made or given, shall not be allowed unless such creditors shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

Construing the foregoing sections of the Bankruptcy Act in a case where the court considered the same question as is here raised, the Supreme Court said (section numbers are changed):

"Considering, for the moment, § 108, apart from the other sections, subdivision a contemplates a set-off of mutual debts or credits between the estate of the bankrupt and the creditor, with an account to be stated and the balance only allowed and paid. Subdivision b makes certain specific exceptions to this allowance of set-off, and provides that it shall not be allowed in favor of the debt of the bankrupt upon an unproved claim or one transferred to the debtor after the filing of the petition in bankruptcy, or within four months before the filing thereof, with a view to its use for the purpose of set-off, with knowledge or notice that the bankrupt was insolvent or had committed an act of bankruptcy. Obviously, the present case does not come within the exceptions to the general rule made by subdivision b.

"It cannot be doubted that except under special circumstances, or where there is a statute to the contrary, a deposit of money upon general account with a bank creates the relation of debtor and creditor. The money deposited becomes a part of the general fund of the bank, to be dealt with by it as other moneys, to be lent to customers, and parted with at the will of the bank, and the right of the depositor is to have this debt repaid in whole or in part by honoring checks drawn against the deposits. It creates an ordinary debt, not a privilege or right of a fiduciary character. National Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897. * * *

"We are to interpret statutes, not to make them. Unless other sections of the law are controlling, or, in order to give a harmonious construction to the whole act, a different interpretation is required, it would seem clear that the parties stood in the relation defined in § 108(a), with the right to set off mutual debts, the creditor being allowed to prove but the balance of the debt. * * * But it is urged under § 96(a)(60a) this transaction amounts to giving a preference to the bank, by enabling it to receive a greater percentage of its debts than other creditors of the same class. A transfer is defined in § 1(25) of the act to include the sale and every other and different method of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security. While these sections are not to be narrowly construed so as to defeat their purpose, no more can they be enlarged by judicial construction to include transactions not within the scope and purpose of the act. This section 1(25), [11 USCA § 1(25)] read with §§ 96(a)(60a) and 93(g)(57g), requires the surrender of preferences having the effect of transfers of property 'as payment, pledge, mortgage, gift, or security which operate to diminish the estate of the bankrupt and prefer one creditor over another.'

"The law requires the surrender of such preferences given to the creditor within the time limited in the act before he can prove his claim. These transfers of property, amounting to preferences, contemplate the parting with the bankrupt's property for the benefit of the creditor, and the consequent diminution of the bankrupt's estate. It is such transactions operating to defeat the purposes of the act, which, under its terms, are preferences.

"As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift, or security. It is true that it creates a debt, which, if the creditor may set it off under § 108(68), amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of § 108(a), (68a). If this argument were to prevail, it would, in cases of insolvency, defeat the right of set-

off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that, to the extent of the set-off, he is paid in full." New York County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 200, 48 L. Ed. 381.

This case, I think, is decisive of the issue. It has been reaffirmed in several recent decisions of the Supreme Court and followed in many decisions of the Circuit Courts of Appeal, District Courts, and of several states. Other cases and authorities in point are: Trust & Savings Bank v. Trust Company, 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; Studley v. Boylston National Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313; Booth, Trustee, v. Prete, 81 Conn. 636, 71 A. 938, 20 L. R. A. (N. S.) 863, 15 Ann. Cas. 306; White v. Pacific Southwest Trust & Savings Bank (D. C.) 9 F.(2d) 650, 663; McPherson v. Citizens' Bank (C. C. A.) 12 F.(2d) 526. See cases cited in annotation under section 108 USCA title 11, page 265, also page 268.

The attorneys for the trustees, however, contend that petitioners cannot bring their cause within the purview of the above-quoted provisions of the Bankruptcy Act, and base their contention upon three postulates contained in their brief as follows:

"1. That the Petitioner, prior to the filing of the Petition in Bankruptcy, set off the bankrupt's deposit with them against the bankrupt's immatured indebtedness to it, which set off was without legal authority and is recoverable by the Trustees.

"2. That if the petitioner did not make such set off, it did transmute the bankrupt's general deposit with it into a specific deposit which is not the subject of set off under Section 68 of the Bankruptcy Act.

"3. That the relief sought by the Petition is not in consonance with the theory of the Bankruptcy Act, and is not conducive of fair dealing between embarrassed debtors and their creditors."

The first of said postulates assumes as a fact that the set-off was made prior to bankruptcy, and that it was without legal authority. The second postulate proceeds on the opposite theory, that no set-off was made before bankruptcy, but that the action of the petitioners in instituting a proceeding in the state court to be allowed to make the off-set, after the appointment of a receiver for the insolvent corporation, transmuted a deposit made in the ordinary course of business, without special features, and not to secure a particular debt, into a specific deposit for such purposes, and therefore created it a deposit within the second subdivision of paragraph (b) of section 108. The third proposition is based upon an entirely different theory, and in reference to it it is sufficient to say that the case of the Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380, from which the foregoing quotations have been taken, and other cases cited, supra, dispose of it.

The trustees have made an interesting argument in support of the first and second propositions, but I am unable to adopt their view. It is undisputed that, as soon after petitioners received notice of the appointment of J. Raymond Flynn as receiver of J. C. Sparks Company, or the assets of said corporation, they promptly applied to the state court, having jurisdiction of the receivership proceeding, to be allowed to offset their note against said deposit. A rule to show cause and temporary restraining order was issued by Hon. Thos. S. Sease, judge of the court of common pleas for Union county in which the receivership action was pending. On the return to the rule to show cause, and over the objections of the trustees, the matter was continued until it could be passed upon in the usual course of the proceeding before the master for Union county, and the restraining order pendente lite was continued of full force and effect. The whole effect of this proceeding on the part of the petitioners was to preserve the status, and protect their rights, until the court could pass upon their claim. If the view of the trustees should be adopted, it would in effect penalize petitioners for resorting to a court of competent jurisdiction, in a legal manner, for the preservation and protection of their rights. It was while the receivership action was pending in the court of common pleas for Union county and the petitioners' proceeding was also pending therein that a petition in bankruptcy of creditors of J. C. Sparks Company was filed in this court and adjudication in due time had thereunder. The effect of the adjudication in bankruptcy, of course, was to divest the state court of jurisdiction, and no further proceedings were had therein. Petitioners were diligent in undertaking to assert and establish their rights in this court, for they appeared at the first meeting of creditors before the referee filed their claim, as al-

lowed, by the Bankruptcy Act, and petitioned the referee to allow the offset and counterclaim.

 There is, however, one other question to be considered, and that is as to the effect of the immaturity of the claim at the time of the filing of the bankruptcy petition and subsequent adjudication thereunder. The rule prevailing in the federal courts should prevail rather than that in the state courts. The reason for this is well stated in the New York case of Frank v. Mercantile Bank, 182 N. Y. 264, 74 N. E. 841, 842, 108 Am. St. Rep. 805, where the court said:

"As the bankrupt law operates through the whole country, the construction to be given to it must necessarily be uniform throughout all the states, not varying with the local law. Therefore, in construing it, we should be governed by the law of set-off as it prevails in the federal courts, and not in our own."

See, also, Whaley v. King, 141 Tenn. 1, 206 S. W. 31; Hockman v. Elliott & Myers, 107 Neb. 280, 185 N. W. 433; Remington on Bankruptcy (4th Ed.) § 1462; U. S. v. Robeson, 9 Pet. (34 U. S.) 319, 9 L. Ed. 142.

That the debt sought to be set off need not be due at the date of the adjudication, if owing, is distinctly decided by the following cases: In re Glass Company (C. C. A.) 135 F. 77; Scammon v. Kimball, 92 U. S. 362, 23 L. Ed. 483; N. Y. County National Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; Remington (4th Ed.) § 1465 (cases cited in note 10); Richardson v. Anderson, 109 Md. 641, 72 A. 485, 25 L. R. A. (N. S.) 393, 130 Am. St. Rep. 543, a Maryland case and case note; Germania Savings Bank & Trust Company v. Loeb (C. C. A.) 188 F. 285. Also see Gerseta Corp. v. Equitable Trust Co., 241 N. Y. 418, 150 N. E. 501, 43 A. L. R. 1320, and case note, page 1327.

In the case note of 43 A. L. R. p. 1328, the annotator states the majority rule as follows:

"While there is a good deal of conflict as to whether a bank has the right to set off an immature claim against the deposit of an insolvent, in the majority of jurisdictions it is held that on the insolvency of a depositor a right of set-off exists against the insolvent or his assignee even though the bank's claim against the insolvent is not yet due, the cases evidently proceeding on the theory that insolvency renders all debts due, and furnishes, of itself, a sufficient ground for set-off. United States-Ex parte Howard Nat. Bank (1876) 2 Lowell 487, 16 N. B. R. 420, 12 Fed. Cas. No. 6,764; Schuler v. Israel (1887) 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; In re Myers (1900, D. C.) 99 F. 691; In re Meyer (1901, D. C.) 107 F. 86, 3 N. B. N. Rep. 440; In re Philip Semmer Glass Co. (1905) 67 C. C. A. 551, 135 F. 77 appeal dismissed in Conboy v. First National Bank (1906) 203 U. S. 141, 27 S. Ct. 50, 51 L. Ed. 128; Germania Sav. Bank & T. Co. v. Loeb (1911) 110 C. C. A. 263, 188 F. 285. See also Kendrick State Bank v. First Nat. Bank (1913, D. C.) 206 F. 940 affirmed in (1914) 130 C. C. A. 202, 213 F. 610; George D. Harter Bank v. Inglis (1925, C. C. A. 6th) 6 F.(2d) 841. And see Clearwater County v. Pfeffer (1916) 149 C. C. A. 373, 236 F. 183. Compare Irish v. Citizens' Trust Co. (1908, D. C.) 163 F. 880."

In addition to the foregoing cases, there are numerous cases cited from many state courts. It is pointed out, however, that this general power of a bank to set off deposits against the unmatured obligations of its insolvent depositors is limited to general deposits only, and cannot exist where the deposits are special.

 As above stated, the deposit in the instant case was general and not special. I am satisfied that the majority rule is in accordance with the general trend of decisions in the federal courts. The following cases are also in point:

Murray v. Corn Exchange Bank, decided in the District Court for the Southern District of New York, November 1927, 31 F. (2d) 373, where the syllabus is as follows:

"Generally a bank may offset amount of its loan against deposit standing to credit of an insolvent borrower, and if, instead of making a bookkeeping entry to show offset, bank accepts insolvent's check against his own account in payment of the loan, such mere change in form does not make transaction a 'preference.'"

American Bank & Trust Company v. Morris, 16 F.(2d) 845, 847, discussing the law of set-off, the Court of Appeals for the Fifth Circuit said:

"There is no doubt that the general rule is that a bank has the right to set off a deposit made in the usual course of business against loans to the depositor, at maturity or in case of his insolvency, and may do so even in the event of bankruptcy." In re

Cross (C. C. A.) 273 F. 39; Wright v. Seaboard Steel & Manganese Corp. (C. C. A.) 272 F. 807; Walsh v. First Ntl. Bank (C. C. A.) 201 F. 522; Durkee v. National Bank, of Fla. (C. C. A.) 102 F. 845.

In the case of Johns v. United Bank & Trust Co. (C. C. A.) 15 F.(2d) 300, certiorari denied (1927) 273 U. S. 754, 47 S. Ct. 457, 71 L. Ed. 874, it was held:

"Notwithstanding trust imposed on property of debtor by agreement between him and creditors, bank held on bankruptcy of debtor to have right of offset."

Wherefore, it is considered by the court, ordered, decreed, and adjudged, that the petitioners' exceptions be sustained, and the order of the referee disallowing the set off be reversed.

It is further ordered that the trustees of J. C. Sparks Company are hereby directed to make the application of set-off of said mutual claims, one against the other, and that the note of M. S. Bailey & Son, bankers, be extinguished by said set-off, and the deposit of the said J. C. Sparks company be likewise extinguished.