WESTERN UNION TELEGRAPH COMPANY V. O. O.
WILHELM.

FILED JUNE 16, 1896.     No. 6757.

1. **Pleading:** DEFINITENESS AND CERTAINTY: REVIEW. It is not error for a court to overrule a motion to compel a pleader to make his pleading more definite and certain, when to sustain such motion would require the pleader to state matters of evidence rather than conclusions of fact.

2. **Contracts:** DAMAGES FOR BREACH. The general rule is that the party injured by breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. (*Griffin v. Colver*, 16 N. Y., 489.)

3. **Telegraph Companies:** FAILURE TO DELIVER MESSAGE: LOSS OF PROFITS OF SALE: DAMAGES. The plaintiff residing at Wayne, Nebraska, authorized his agents in Omaha, Nebraska, to exchange a tract of land owned by him for a stock of merchandise, investing them with discretion as to the merchandise and terms of the exchange. The agents negotiated such an exchange and delivered to the telegraph company at Omaha a message addressed to the plaintiff advising him of the fact and requesting him to come to Omaha and bring an abstract of title, a deed, and $300 in money. The telegraph company never delivered the message and by reason thereof the exchange was never consummated. It appeared that if the message had been delivered the exchange would have been effected and the plaintiff would have made a profit thereon. *Held*, The telegraph company was liable to the plaintiff for the profits he would have made had the exchange been consummated.

ERROR from the district court of Wayne county. Tried below before JACKSON, J.

The facts are stated by the commissioner.

*Estabrook & Davis*, for plaintiff in error:

The district court erred in overruling the motion to make the petition more definite and certain. (*Goodwin v. Walls*, 52 Ind., 268; Elliot, Appellate Procedure, sec. 665.)

The court erred in giving instructions 3 and 4 on its own motion. (*Omaha Coal, Coke & Lime Co. v. Fay*, 37 Neb.,

75; *Wasson v. Palmer*, 13 Neb., 376; *School District v. Foster*, 31 Neb., 501.)

Under the evidence it is perfectly plain that the consummation of the trade depended upon its approval by Wilhelm. In fact he was asked by the telegram to come to Omaha. It is perfectly apparent that he never did give any authority to Malmgren to make a binding contract. The trade depended upon his approval. There is no presumption that he would have been satisfied. Damages depending upon a contingency of this kind are too remote and lack the element of certainty. (*Clay v. Western Union Telegraph Co.*, 81 Ga., 285; *Baldwin v. United States Telegraph Co.*, 45 N. Y., 744; *Beaupré v. Pacific & Atlantic Telegraph Co.*, 21 Minn., 155; *Western Union Telegraph Co. v. Hall*, 124 U. S., 444; *Hibbard v. Western Union Telegraph Co.*, 33 Wis., 558.)

*A. A. Welch* and *W. L. Rose*, *contra*.

RAGAN, C.

O. O. Wilhelm sued the Western Union Telegraph Company in the district court of Wayne county, alleging in his petition, in substance, that on the 29th of January, 1892, Malmgren & Lovegren, residing in Omaha, Nebraska, were his agents; that on that date they delivered to the telegraph company at Omaha a dispatch in words and figures as follows:

"OMAHA, NEB., Jan. 29, 1892.

"To *O. O. Wilhelm, Wayne, Neb.*: Come at once. Have stock. Bring deed, abstract, and $300. Answer.

"MALMGREN & LOVEGREN."

That the telegraph company received this message and agreed to correctly transmit and deliver it to Wilhelm at Wayne, Nebraska; that prior to the said date Wilhelm's agents were negotiating an exchange of a quarter section of land in Sherman county, belonging to Wilhelm, for a stock of merchandise in Omaha, Nebraska; that on said date Wilhelm's agents had effected the exchange of Wil-

helm's land for a stock of merchandise; that Wilhelm had made an engagement to meet his agents at their office in Omaha upon receipt of a message from them that they had perfected the exchange of said land for said merchandise; that the telegraph company never delivered said message; that by reason thereof Wilhelm arrived in Omaha too late to consummate the exchange of said land for said stock of goods; that said exchange was for that reason never perfected, and he thereby lost the profit he would have made in such exchange, to his damages in the sum of $1,500. Wilhelm had a verdict and judgment for $100, to reverse which the telegraph company has filed here a petition in error.

1. The telegraph company filed in the district court a motion as follows: "Comes now the defendant and asks the court that the plaintiff be required to make his petition herein more definite and certain, in this, to-wit: How and in what manner he could, or expected he could, make a profit of $1,500 in the trade or exchange mentioned in said petition." The overruling by the district court of this motion is the first assignment of error argued here. The petition was sufficiently definite and certain. It stated the facts. To have required Wilhelm to state in his petition in what manner he would have realized a profit on the exchange, had it been made, would have required him to state the evidence. If counsel for the telegraph company desired Wilhelm to state in his petition the value of the land and the value of the goods, they should have so framed their motion. Unless a motion can be allowed in the exact form presented to the court it should be denied. (*McDuffic v. Bentley*, 27 Neb., 380; *Stuht v. Sweesy*, 48 Neb., 767.) The refusal of the court to grant this motion was not error.

2. It is next assigned for error that the district court erred in giving instructions 3 and 4. The exception taken to the instructions at the trial was in the following language: "To the giving of the third and fourth of which instructions the defendant then and there duly excepted."

The court did not err in giving both these instructions. The fourth, at least, is a correct statement of the law of the case, and since the assignment is that the court erred in giving both the instructions, and one of them is good, the assignment must be overruled.

3. The third assignment of error is that the court erred in refusing instructions 1, 4, and 5 asked by the defendant below. Exceptions taken at the trial to the instructions refused were as follows: "The defendant thereupon asked the court to instruct the jury as follows, which the court refused to do, and upon such refusal the defendant then and there excepted." Then follow instructions Nos. 1, 4, 5, and 6 asked by the telegraph company, and then the following: "To the refusal of the court to give to the jury the last above instructions the defendant then and there excepted." Since the court did not err in refusing to give all these instructions, the assignment is overruled.

4. The fourth assignment of error is that the verdict is not supported by sufficient evidence. In support of this contention it is said: "The evidence fails to show that the property which defendant was to receive was of greater value than the property he was to give." It was admitted on the trial that the land of Wilhelm, over and above incumbrances thereon, was of the value of $700, and the $300 cash which he was also to pay made the value of the land and money which he was to give for the goods $1,000. A witness testified in behalf of Wilhelm, as to the value of the stock of merchandise, as follows: "I think it was $2,400; am not right sure, but know it was over $2,000." A witness on behalf of the telegraph company testified that the merchandise was worth not to exceed $200; but this witness admitted that he had come from Omaha to Wayne to testify in behalf of the telegraph company, and that it was to pay him for his time and attendance $10 a day and expenses. All that we can say about the value of this stock of merchandise is that the evidence on the subject was conflicting. The witnesses and their credibility were for the jury;

and the amount of damages awarded by the jury are within the excess of the value of the stock of merchandise over the land and money which Wilhelm was to exchange therefor.

A second argument in support of this contention is that "the evidence shows that the trade was not consummated, but depended upon the examination of the goods and approval by the defendant." It must be confessed that the evidence is not of a very clear and satisfactory character. The evidence on the part of Wilhelm tended to show that prior to the time the message was delivered to the telegraph company he owned a piece of land in Sherman county; that he himself resided at Wayne, Nebraska; that he had authorized Malmgren & Lovegren, who appear to have been real estate agents at Omaha, to trade this land for a stock of merchandise; that he invested them with discretion as to the merchandise and the terms of the exchange; that he authorized them to "pledge him"—in the language of the evidence—for $300 in addition to his land for a stock of merchandise; that Malmgren & Lovegren found a stock of merchandise and agreed with the owner thereof, or his agent, to exchange him the Wilhelm land and $300 for the stock of merchandise; that Malmgren & Lovegren, after making this agreement for the exchange, sent the telegram to Wilhelm which is the subject of this suit, notifying him that they had made the exchange and asking him to come to Omaha at once and bring the deed to his land and an abstract of title thereto, and $300 in money; that if this dispatch had been promptly delivered, Wilhelm would have reached Omaha in time to have delivered his deed and money and accepted the goods, and would have done so. It is true, so far as the record shows, that the owner of the goods had never seen the land, nor had Wilhelm or his agents seen the goods; they were in boxes. The whole transaction appears to have been a kind of "pig in the poke" trade or exchange; but we are constrained to say that the evidence, and the inferences fairly and rea-

sonably and logically deducible therefrom, support the conclusion that Wilhelm's agents were authorized to make the exchange.

5. Finally, it is insisted, in substance, that the evidence does not show that the neglect of the telegraph company to deliver the message was the proximate cause of the damages sustained by Wilhelm. Wilhelm's petition is framed upon the theory that by reason of the failure of the telegraph company to deliver the dispatch he was prevented from consummating the exchange of the land for the stock of goods, and thereby lost the profits he would have made had such exchange been consummated. These damages are not too remote. The general rule is that the party injured by breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. (*Griffin v. Colver*, 16 N. Y., 489. See, also, *Squire v. Western Union Telegraph Co.*, 98 Mass., 232.)

In *Western Union Telegraph Co. v. Haman*, 20 S. W. Rep. [Tex.], 1133, on the 21st day of June, 1889, one of the firm of Haman & Co., after receiving instructions by wire from his firm, purchased a quantity of wool for the firm at eighteen and one-half cents per pound and delivered a message to the telegraph company advising his firm of such purchase. The telegraph company neglected to deliver the message. When the wool was purchased it was worth in the market twenty-one cents per pound, but when the firm first learned of the purchase the price had declined. Haman & Co. then sued the telegraph company to recover the difference between the price they had paid for the wool and its market price on the 21st of June. It appeared from the evidence that had the dispatch been promptly delivered Haman & Co. could and would have sold the wool at twenty-one cents per pound. The court held that the damages were not too remote, were not uncertain, and were not contingent. (*Parks v. Alta California Telegraph Co.*, 13 Cal., 423; *Turner v. Hawkeye Tele-*

*graph Co.*, 41 Ia., 458; *Candee v. Western Union Telegraph Co.*, 34 Wis., 471.) Since it appears from the evidence that the message delivered to the telegraph company for Wilhelm was never delivered; that by reason of the failure of the telegraph company to deliver the message the exchange of properties was not consummated, and he thereby lost the profits he would have made upon that exchange; and since the evidence warrants the conclusion that had the message been delivered the exchange would have been consummated, we think the evidence sustains the finding that the neglect of the telegraph company to deliver the message was the proximate cause of the loss and damages sustained by Wilhelm. The judgment of the district court is

AFFIRMED.