DAWSON COUNTY STATE BANK, APPELLANT, V. A. E. DURLAND, APPELLEE: M. C. DURLAND ET AL., APPELLANTS.

FILED MAY 25, 1926. No. 23967.

1. **Vendor and Purchaser:** ASSIGNMENTS: RECORD: VALIDITY. "The record of an unacknowledged deed of assignment is a nullity, furnishing no protection to the assignee as against the creditors of the assignor." *Heelan v. Hoagland,* 10 Neb. 511.

2. **Mortgages:** ASSIGNMENTS: PRIORITIES. "The law providing for the registration of instruments affecting land titles gives to the assignee of a junior incumbrance priority over a senior incumbrancer only in case his assignment is in registerable form and recorded before the senior incumbrance." *Rumery v. Loy,* 61 Neb. 755.

3. **Evidence:** WRITTEN CONTRACTS: PAROL EVIDENCE. The test of the completeness of a written contract is the writing itself, and parol evidence to show that it is incomplete is not competent.

4. "The terms and conditions of a written contract implied by law

are no more subject to variation by parol evidence than its express terms." *Grant v. King*, 117 Minn. 54.

APPEAL from the district court for Dawson county: GEORGE C. GILLAN, JUDGE. *Reversed, with directions.*

*W. A. Stewart* and *Sinclair & McDermott*, for appellants.

*Cook & Cook, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

Plaintiff is the owner and holder of two certain promissory notes in the sum of $8,000 and $7,200, respectively. The notes are each secured by separate mortgages on the separate quarter sections of a half section of land in Dawson county. The prayer of the petition is that plaintiff's mortgage liens be adjudged and decreed to be prior and superior to any right, title or interest that the defendant, A. E. Durland, and the intervening defendants, or any of them, may have or claim to have in the land in suit by virture of certain recitals in a release of a former $20,000 mortgage on the same land, or in any manner whatever, and that all defendants " be decreed to have no interest, right or title or lien in and to any of the lands owned by said Fannie B. Durland herein described," and for such other and further relief as equity may require in the premises. The release above referred to was executed by A. E. Durland and filed prior to the date of the filing of plaintiff's mortgages. This suit grows out of the A. E. Durland release, and certain recitals therein, as above noted, and is the instrument which defendants contend is superior to plaintiff's $15,200 mortgage lien on the half section of land in suit. The release follows:

"This agreement made and entered into this 13th day of February, 1922, by and between A. E. Durland, first party, and M. C. Durland and Fannie B. Durland, his wife, and O. B. Durland, second parties, of Lexington, Nebraska, witnesseth:

"That first party has this day released a certain mortgage executed and delivered to him, by M. C. Durland and wife, on the north half of section 31, township 10, range 20, in Dawson county, Nebraska, to secure a note of $20,000. Said mortgage is recorded in book 65, on page 497, of the deed records of Dawson county, Nebraska.

"Now, therefore, in consideration of said release, second parties agree to pay to first party in cash the sum of $100 in person on the first day of each and every month hereafter for and during the natural lifetime of the first party. For the payment of which, second parties bind their heirs, and their estates, and as an additional consideration for said release M. C. Durland and O. B. Durland, of the second parties, hereby acknowledge the receipt and satisfaction for all personal services rendered to the first party, and agree to give and extend to first party all other personal attention and services that they may be able to give first party in the settlement, disposition and carrying on of the personal affairs of the first party, without expense."

"Witness our hands, the day and date aforesaid.

"Witness:                          M. C. Durland.
"W. A. Stewart.                     Fannie B. Durland.
"H. L. Stuart.                      O. B. Durland."

The following stipulation appears in the record:

"Mr. Stewart:  It is stipulated and agreed by and between the parties * * * Fannie B. Durland, the wife of M. C. Durland, was the owner of the legal title to the north half of 31, 10, 20" (320 acres in Dawson county) on February 13, 1922, "and that * * * said Fannie B. Durland and her husband (November 16, 1922) made, executed and delivered to the plaintiff a mortgage," duly recorded, on the above half section of land, to secure the payment of two certain interest-bearing promissory notes, in the aggregate sum of $15,200.

"Mr. W. M. Cook:  It is further stipulated that * * * the said A. E. Durland was the owner of said real estate (the half section) in fee simple from February 12, 1904, until

September 17, 1919; that on September 17, 1919, A. E. Durland conveyed said land to M. C. Durland by deed."

This deed and all subsequent instruments affecting title were duly recorded. M. C. Durland and wife excuted a mortgage thereon for the purchase price, namely, $20,000; that "on January 27, 1921, M. C. Durland conveyed said real estate to Fannie B. Durland by deed; * * * that on February 13, 1922, A. E. Durland executed * * * a release of said $20,000 mortgage."

When the taking of evidence was concluded, the court found generally in favor of defendant A. E. Durland, and against the plaintiff bank and the defendants M. C. Durland and wife and O. B. Durland, their son, and held that plaintiff's mortgage lien was junior and inferior to the lien of defendant A. E. Durland, except in respect of one of the quarter sections of land which the court found was the homestead of M. C. Durland and wife, and that A. E. Durland's claim was not a lien thereon from the fact that the so-called agreement was not acknowledged by M. C. Durland and wife. It seems that M. C. Durland and his wife and their son, O. B. Durland, or some of them, are the owners of an additional 240 acres of farm land and considerable real estate in Lexington. In view of this fact the court further found that the agreement is a valid and subsisting lien upon all of the real estate owned by M. C. Durland, Fannie B. Durland and O. B. Durland, except the homestead, to secure the performance of the terms of the agreement. The plaintiff bank and M. C. Durland, Fannie B. Durland, his wife, and O. B. Durland have appealed.

Counsel for plaintiff argues that defendant A. E. Durland's demand is inequitable and unconscionable. He argues: "What was the consideration for the bonus obligation? That the land mortgaged be freed of its lien. Now the appellee (A. E. Durland) seeks the aid of a court of equity to establish a lien by virtue of this bonus obligation, not only on that land, but upon all the property of the parties beyond that land as well." Continuing, counsel argues:

"Appellee undertakes to tell a court of equity that, no matter what they get, he is entitled to get a lien on all their property, although the obligation on which he claims his lien was executed for the purpose of relieving a lien on a portion of their property."

The question for determination here is whether the release, or contract, or agreement, call it what you may, creates a lien that is prior and superior to the lien of plaintiff's mortgages.

Referring to conveyances of real estate, section 5613, Comp. St. 1922 provides:

"They shall not be deemed lawfully recorded unless they have been previously acknowledged or proved in the manner herein prescribed."

There is no pretense that the instrument in question was "acknowledged or proved" in the manner prescribed by the recording acts. Does it then come within the meaning of the statute? Does the instrument operate as constructive notice merely from the fact that it was spread upon the record pertaining to conveyances in Dawson county? Under the authorities we think that both questions must be answered in the negative.

Pomeroy, in his work on Equity Jurisprudence, volume 2 (4th ed.) sec. 652, says:

"The record does not operate as a constructive notice, unless the instrument is duly executed, and properly acknowledged or proved, so as to entitle it to be recorded. The statutes generally require, as a condition to registration, that the instrument should be legally executed, and that it should be formally acknowledged or proved, and a certificate thereof annexed. If a writing should be placed upon the records with any of these preliminaries entirely omitted or defectively performed, such a record would be a mere voluntary act, and would have no effect upon the rights of subsequent purchasers or incumbrancers."

Story, in his work on Equity Jurisprudence, volume 1 (13th ed.) sec. 404, states this as being the rule:

"The doctrine as to the registration of deeds being con-

structive notice as to all subsequent purchasers is not to be understood of all deeds and conveyances which may be *de facto* registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity; and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud."

The above excerpts from Pomeroy and Story are cited with approval by Mr. Justice White in *Lynch v. Murphy*, 161 U. S. 247. In *Benedict v. T. L. V. Land & Cattle Co.*, 66 Neb. 236, this court held to this rule:

"Constructive notice cannot be imputed from the recording of a document which the statute does not recognize as an instrument that should be recorded. Instruments, to impart constructive notice, must be recorded in their true character."

On principle, *Heelan v. Hoagland*, 10 Neb. 511, seems to be in point, wherein Judge Lake said: "The record of an unacknowledged deed of assignment is a nullity, furnishing no protection to the assignee as against the creditors of the assignor."

*Rumery v. Loy*, 61 Neb. 755, is in point: "The law providing for the registration of instruments affecting land titles gives to the assignee of a junior incumbrance priority over a senior incumbrancer only in case his assignment is in registerable form and recorded before the senior incumbrance."

In *Lewis v. Holdrege*, 56 Neb. 379, in an opinion by Sullivan, J., we said: "A plaintiff who does not stand in conscientious relations towards his adversary, with reference to the claim which is the subject of the action, is not entitled to the aid of a court of equity, and will be denied affirmative relief, although such claim does not arise out of an illegal transaction and is not tainted with actual fraud."

In *Keeling v. Hoyt*, 31 Neb. 453, in an opinion by Norval, J., we said: "A certificate of acknowledgment to a real

estate mortgage which does not show that the mortgagor voluntarily executed the instrument is invalid. The record of a real estate mortgage which is not legally acknowledged does not operate as constructive notice."

In *Langley v. Vaughan,* 57 Tenn, 553, the rule was emphasized: "An administrator took from a legatee, to whom he had made advances, an instrument in the following words: 'Received, Gallatin, March 16, 1867, of J. A. V., administrator of the estate of H. B. V., twenty-four hundred dollars and twenty-four cents, the same to be deducted out of my interest as legatee in the said estate. If the said amount is not realized out of the personal effects of the estate, the same shall be a lien on real estate or my interest in same.' Held, this instrument created no lien upon the land, because the description is wholly insufficient, and, besides, it neither conveys nor purports to convey or mortgage the land."

Some oral evidence was introduced tending to show the intention of the parties to the release, or agreement, in controversy in respect of what it meant and the like. Plaintiff argues that, if the agreement in suit fails to express the intention of the parties, reformation is the remedy, and not parol evidence of the intention. We think the authorities sustain counsel's contention.

"Reformation is that remedy in equity by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error or mistake has been committed." 34 Cyc. 904.

In *The Delaware,* 14 Wall. (U. S.) 579, 603, the court said: "Verbal agreements, however, between the parties to a written contract, made before or at the time of the execution of the contract, are in general inadmissible to contradict or vary its terms or to affect its construction, as all such verbal agreements are considered as merged in the written contract."

In *Grant v. King,* 117 Minn. 54, this is said: "The test of the completeness of a written contract is the writing itself, and parol evidence to show that it is incomplete is not com-

petent. The terms and conditions of a written contract implied by law are no more subject to variation by parol evidence than its express terms."

To substantially the same effect are the following: *Spiegal & Son v. Alpirn*, 107 Neb. 233; *Hamilton v. Thrall*, 7 Neb. 210. See, also, 13 C. J. 524, sec. 485.

In view of the record, we conclude that the judgment must be reversed and the cause remanded, with directions that plaintiff's mortgage liens be decreed and adjudged to be first liens upon the real estate in question.

REVERSED.