## WILSON v. HUDSON MOTOR CAR CO.

District Court, D. Nebraska, Omaha Division. September 8, 1928.

No. 2207.

Anan Raymond, of Omaha, Neb., and Paul Jessen, of Nebraska City, Neb., for plaintiff.

348

Kennedy, Holland, De Lacy & McLaughlin, of Omaha, Neb., for defendant.

WOODROUGH, District Judge. The principal question is whether the defendant has made itself amenable to the court's process by doing business within this state. Defendant manufactures Hudson automobiles and parts in Michigan, and there sells them to dealers in this state pursuant to written contracts with the dealers. These contracts include a great many rules and regulations to be observed by the dealers in buying and selling cars and parts, but the dealers are buyers of the manufactured products and are not employees of the manufacturers. The defendant does, however, have an employee continuously in this state called a "district supervisor," upon whom the process has been served. This supervisor has a number of subordinate employees under him, and maintains an office in Omaha. The functions performed for defendant within the state by this district supervisor are to solicit persons to enter into dealers' contracts with defendant and to keep the original contracts, correspondence, and records in the office here in the state; to help the defendant in holding the dealers up to the contracts they have made including, amongst many things, the adjustment of some disputes; to stimulate the purchase of defendant's products by dealers; to take part in allotting available cars among the dealers when demand exceeds supply; to boost the dealers' sales by many devices, some directed to the dealer and some to the public, and mostly carefully planned out by the defendant for more or less uniform application throughout the country; to service some cars that may be complained about by individual purchasers; and to gather information and keep defendant posted about everything in this state affecting defendant's interests.

In detail that includes the doing of a great deal of work by the company's agents in this state continuously, much of it involving exercise of discretion by the supervisor, and much of it touching closely defendant's manufacture and sale of products for use in this state.

Considered by themselves, the activities of this supervisor and his subordinates working out of the office regularly maintained here present a complete and perfect picture of men doing business in the state. Corporations do business only through agents, and, if the agents are doing corporate business, it would seem to follow that the corporation is doing business. If so, our courts should have general jurisdiction over it, and the proper person to serve process on would be the supervisor in charge. But the matter is not quite so simple. Quite the contrary.

This suit is for damages for a personal injury caused by a defect in one of the Hudson cars, and, as the state is more or less filled with automobiles of outside manufacture mostly distributed under the same general plan as the Hudson, the question whether such a suit can be maintained here is of general importance. To reiterate that it depends on the particular facts of each case gets us nowhere unless we settle upon the angle from which the particular facts are to be considered. If it were enough to observe the activities and the fact of employment by the company there would be no controversy. But the defendant is a manufacturing corporation domiciled in Michigan, manufacturing and selling its entire output there to dealers. Such dealers are selling their own merchandise in localities throughout the country. These functions together make up a great industry. The troublesome question is whether the supervisor's activities in the state can be held to be merely activities that are incidental to the business of defendant. If so, they are insufficient to bring the manufacturing corporation into the jurisdiction for this kind of a suit.

It is well-settled law that at least certain kinds of foreign corporations are not doing business within another state so as to subject themselves generally to the jurisdiction of the courts of that state merely because they have soliciting agents on the ground either casually or permanently. The illuminative cases are the railroad cases. Many railroads have soliciting agents and agencies far remote from the state where they carry freight and passengers. These are very active, and, where the agencies have permanent offices, present the resemblance to doing business. But the Supreme Court holds that such activities do not bring the companies generally into the jurisdiction of the courts at such distant places. It observes that such solicitation of traffic in remote states, although it is a recognized part of a railroad's business, and as carried on resembles doing business, does not reproduce in the state the real or main kind of business that a railroad as a carrier of freight and passengers has to do. It looks at the railroad business as a whole from a national point of view. It notes that in the states where the carriage of freight and passengers is done the corporation has and handles physical property, real and personal, and employs workmen and makes contracts

involving the use of large amounts of labor and capital. By contrasting these main functions and characteristics of the company's business with the local activities of the soliciting agents, a difference in the essence of the business done at the domicile and that done in remote places becomes obvious. The court is lead to the conclusion that such local activities make up a mere incident of the whole business and do not constitute doing business. Viewing the matter from the national angle, which brings out the contrast between the business of transporting and mere soliciting activities, the court concludes that it would necessarily impose an unreasonable burden on interstate commerce to make the carriers try suits arising out of operating their railroad in any remote states where they have a soliciting agent. The position is harder to maintain, however, as the art of getting business develops so enormously and takes on greater importance.

Although the automotive manufacturing companies are not engaged in interstate commerce in the same way that the railroads are, their business also has a national scope and aspect, and they are equally dependent upon untrammeled interstate commerce. I hold therefore that the Hudson Motor Car Company is not generally subject to suit in Nebraska on account of something it did or failed to do in its factory in Michigan, unless it is doing business here in a more substantial way than is evidenced by mere solicitation of business.

On the other hand, the International Harvester Case suggests the kind of activities which do bring a foreign manufacturing corporation into the state generally for suits against it. It was shown there that the manufacturer's agent not only solicited and took orders for the product, but collected the price in cash and otherwise. The reason for the existence of the Harvester Company is to manufacture machines, sell them, collect the price, and distribute the profits. Where the functions of procuring the sale and collecting the price were both being continuously carried on in the state by agents of the company, it was doing business there. Those functions are of the vital essence of the whole business.

In this case I proceed from consideration of the whole business of the Hudson Company as an automotive manufacturing company to consideration of certain salient activities of the local agents and then to the local activities in entirety.

First, the matter of making allotment of cars to dealers. The dealers' contracts reserve to defendant the right to accept or reject orders at its option. The showing here is that it "has happened and is now frequently the case" that the supply of cars is limited and the home officer has to make a general allotment to the state out of which the local supervisor "without referring the matter back to the Detroit office" decides how many to ship to the several dealers, and they are shipped accordingly. This goes to the essence of the business; it involves decision whether to sell and deliver or not, and the sum of such decisions outside of manufacture, collections, and incidental activities, make up the whole business of the company.

Then the matter of maintaining service men in the state under direction of the supervisor is material. Defendant sells to dealers upon the standard warranty of the National Automobile Chamber of Commerce against defective materials. These service men working in the state, in connection with this guaranty of the company, carry the essential character of the business along with them. Making cars and making them work go right along together. Where such work has to be done regularly and continuously in the state under direction of a supervisor in charge, there is no mere incidental activity, but a replica of the actual doing business pursuant to the obligation of the company's contract.

The keeping of the company's original contracts, correspondence, and files in the office of the supervisor is a significant circumstance though not determinative. Indeed I find no other activity upon which I can put my finger and say that, of itself, it clearly evidences doing business by the company in the state. It may be argued as to each of the activities that it is in the nature of solicitation of business or advertising or that it is casual and therefore merely incidental and not of the essence of the business.

On the other hand, when I contemplate the activities shown in their entirety as they are carried on continuously in and out of the office of the supervisor, and have regard to the many ways in which the supervisor controls the course of business arising out of the company's contracts which he holds in his office in the interest of the company, I am persuaded that the company has confided such authority in the supervisor, and imposed such duties upon him, that he must be held to be a managing officer of the company. His functions are more than incidental; their exercise presents the company doing business in the state.

The special appearance therefore should be overruled.