ALBERT O. ELVIDGE ET AL., APPELLEES, V. IRVIN S. BRANT,. APPELLANT.

FILED MAY 12, 1936.   No. 29680.

*Kelsey & Kelsey,* for appellant.

*Deutsch & Young, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and YEAGER, District Judge.

GOSS, C. J.

Defendant appeals from a judgment against him for $6,000 following the verdict of a jury.

The petition alleges that in May, 1933, Golden Star Creamery, Inc., was engaged in the manufacture and distribution of butter and other dairy products at Norfolk, plaintiffs were employees in charge of its operation, and defendant was a wholesaler of butter and other food products at Reading, Pennsylvania; that the creamery company was the owner of certain described real estate in Norfolk, with its plant mortgaged as real estate and its equipment by a collateral chattel mortgage to Lincoln Safe Deposit Company, as trustee for bondholders, in the sum of $30,000; that during September, 1933, with the

aid of plaintiffs, defendant negotiated the purchase of the mortgage and bonds for $20,000, and in November, 1933, they were delivered to him for that sum, and defendant became the owner by deeds and bills of sale of all the creamery property in consideration of his agreement to forbear any right to a deficiency judgment against Golden Star Creamery, Inc., or to enforce any rights against its directors and stockholders; that defendant went into possession of the creamery property about January 1, 1934, subsequently foreclosed and received sheriff's deed and bill of sale on or about July 19, 1934, and is now the owner in fee simple of all of said property.

The petition further alleges that on or about December 15, 1933, defendant orally agreed with plaintiffs to perfect a corporate organization in the event of the acquisition of the creamery property and to sell and convey the property to the corporation in consideration of the issuance of capital stock to him, and, in consideration of $3,000 then paid by plaintiffs and, in the further consideration of their assistance, to issue to them 20 per cent. of the capital stock thereof; that defendant further orally agreed to furnish to the corporation any money necessary for working capital, to be repaid from the earnings of the corporation, and as a memorandum of the oral agreement defendant prepared an instrument in writing, which was executed by plaintiffs and defendant, a copy of which is attached as an exhibit; that defendant knew and supposed that plaintiffs understood the written agreement to embrace only the terms of the oral agreement and plaintiffs did so understand it; that about January 1, 1934, defendant, having possession and ownership of the property described as of the Golden Star Creamery, Inc., commenced the operation of the plant; that plaintiffs had previously been employed by him to manage and operate the same, and that they in all respects performed the oral agreement and offered to assist in any way in perfecting the corporate organization, but, notwithstanding, defendant wholly failed, and on or about October

13, 1934, expressly refused, to perfect the corporate organization and in any manner to perform the oral agreement; that the plaintiffs had then fully performed all of the oral agreement on their part to be performed; that by reason of the breach of the contract plaintiffs have been damaged to the extent of one-fifth of the value of the corporate stock of such corporation, holding title to the property described with available working capital, and they pray judgment for $10,000 with interest.

The agreement is as follows:

"This agreement made this 16th day of December, 1933, by and between Irvin S. Brant of Reading, Pennsylvania, first party, and A. O. Elvidge and George J. Savage, second parties, witnesseth:

"Whereas, first party is endeavoring to purchase the buildings, equipment, etc., of Golden Star Creamery, Inc., and if he does so purchase, he proposes to organize a corporation to conduct and carry on a creamery business in Norfolk, Nebraska; and second parties desire to purchase stock in said creamery company and are willing at this time to pay to first party the amount of such purchase price, stock to be delivered when said new organization is completed, and it is desired to state the terms of the agreement.

"Now therefore, in consideration of the premises and each party for a valuable consideration received by him, it is agreed as follows:

"1. There is paid by second parties to first party at this time, the sum of $3,000, which is in payment for the stock hereinafter described, if any and when same is issued.

"2. First party, if and when he acquires the said property of said Golden Star Creamery will form a corporation with a paid-up capital of three hundred (300) shares of the stated par value of $10 per share, and upon the forming of said corporation, second parties assisting in the formation thereof as subscribers to stock, sixty (60) shares of said stock will be delivered to second

parties; or in the event that the number of shares in said corporation should be changed, then second parties are to have one-fifth of the total number of shares of paid-up stock of said corporation, and first party agrees that said corporation shall issue said stock to second parties, or that the same shall be transferred to them.

"3. Second parties agree that the $3,000 now paid to first party is in payment for said shares of stock so to be purchased by them from first party, and agree to accept said shares of stock as the full consideration for said $3,000.

"It is mutually understood by all of the parties to this contract that they each and every (one) understand the situation, that there are no representations of any kind or nature of said stock made by any of them, and that each and every party to this transaction enters into the same on his own knowledge and not on any representation or statement made by any of the other parties to this transaction.

"This agreement shall be binding upon parties hereto, their heirs, representatives and assigns.

"Made, executed and delivered in duplicate the day and year first above written.

"Witness: Charles H. Kelsey. (Signed) Irvin S. Brant

"First Party.
"A. O. Elvidge
"G. J. Savage
"Second Parties."

The answer alleges that, in addition to the principal mortgage and bond lien, the Golden Star Creamery property had a large amount of taxes unpaid and there were other liens and encumbrances; alleges that he purchased the notes, bonds and mortgages representing $30,-000 of indebtedness and went into possession of the property as mortgagee on December 16, 1933, commenced an action to foreclose, has received a deed and bill of sale of the property, but a motion to set aside the sale was filed and has never been disposed of; denies each and

every other allegation of the petition; defendant further pleads a "tentative plan" that, if and when he secured title to the property, he would cause to be organized a corporation and would either lease the property under terms by which he would receive 6 per cent. interest on the total amount of indebtedness which he had purchased, or he would convey the property and take back a mortgage for the total amount due on the debts and all expenses, the new corporation to contract with defendant to apply all profits to pay the principal and interest; that plaintiffs paid to defendant $3,000 to secure stock, and that articles of incorporation have been filed and the corporation is acting, but that the time for completing the transaction has not arrived because of the inability of defendant to secure title and to issue the stock; defendant expressly denies that there was any agreement by which the property secured by him under the mortgages purchased was to become part of the assets of the corporation free and clear of encumbrances.

Defendant further alleges that plaintiffs took part in the negotiations by which defendant purchased the bonds and mortgages and organized the corporation, either to receive from it a rental or a mortgage for the amount due, as heretofore stated, and they are therefore estopped to assert that the property is to go into the new corporation on any other basis than that alleged by defendant. Plaintiffs' reply traverses the answer.

No objection was made to the petition until the trial had started. Then defendant interposed the objection that the petition did not state a cause of action against defendant. "Where an objection that a petition does not state a cause of action is not interposed until after the commencement of the trial of a case, the pleading will be liberally construed, and, if possible, sustained." *Welch v. Adams,* 87 Neb. 681, 127 N. W. 1064, and cases cited.

Defendant's position is that the agreement pleaded by plaintiffs—that defendant was to organize a corporation and to pay plaintiffs for their money and services one-

fifth of the stock in the corporation—was not proved by competent and material testimony. His reason is that all of the negotiations of the parties were merged in the written contract of December 16, 1933.

That the written memorandum is not clear and unambiguous appears from the pleadings of the parties and also from the agreement itself. It says that "It is mutually understood by all of the parties to this contract that they each and every (one) understand the situation;" in his demurrer *ore tenus* defendant stated that "such contract is indefinite and uncertain;" there is no provision by which plaintiffs are expressly permitted to recover back the $3,000 advanced for stock; not only the pleadings but the evidence show that the written contract was ambiguous, indefinite and uncertain; it was necessary to have the evidence submitted to a jury to determine the real and entire agreement, oral and written, between the parties.

On the theory that the agreement was partly written and partly oral, we quote from Restatement, Contracts, sec. 239: "Where there is integration (formal written agreement) of part of the terms of a contract, prior written agreements and contemporaneous oral agreements are operative to vary these terms only to the same extent as if the whole contract had been integrated." In Nebraska annotations to this section it is said: "The parol evidence rule does not apply unless the written instrument fairly covers the matters dealt with in the oral agreement. In other words, it must be an integration thereof. (Citing cases.) Where the integration does not purport to cover the whole agreement, oral testimony is admissible to supply omitted portions not inconsistent with the writing. (Citing cases.) So where integration shows on its face that it does not cover the entire agreement. (Citing cases.)"

Section 240, Restatement, Contracts, is as follows:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration,

nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

"(2) Where no consideration is stated in an integration, facts showing that there was consideration and the nature of it, even if it was a promise, or any other facts that are sufficient to make a promise enforceable, are admissible in evidence and are operative."

Our Code is much broader than the general rule. Section 20-1217, Comp. St. 1929, says: "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

We think the court did not err in overruling the demurrer to any evidence and in receiving oral testimony as to the real contract between the parties.

Defendant pleaded that the foreclosure of the mortgage he had acquired had never been fully disposed of. The evidence shows that the sale had been confirmed and he had received his sheriff's deed, but thereafter the trustee in bankruptcy of the Golden Star Creamery, Inc., had filed a motion to vacate the decree of foreclosure and order of confirmation. While the motion was filed during the same term at which the confirmation was had, nothing had been done to secure action upon it and several terms of court have succeeded. The matter must come within some of the provisions of section 20-2001, Comp. St. 1929, to authorize a vacation of the order at a subsequent term. This comes within none of those provisions. "After the final adjournment of the term of court at. which a judgment has been rendered, the court has no authority or power to vacate the judgment except for the reasons stated and within the time limited in chapter 20, art. 20,

Comp. St. 1929." *Lyman v. Dunn*, 125 Neb. 770, 252 N. W. 197.

Complaint is made of instructions Nos. 6 and 7. We do not deem it necessary to quote them. Instruction No. 6 required a clear meeting of the minds whether the contract was in writing or parol or both. It required plaintiffs to prove the alleged agreement in "clear and express terms," which is as strong if not stronger than by a preponderance of the evidence as set forth elsewhere in the instructions. It set forth the following elements to be proved by plaintiffs: (1) That defendant would acquire the property both real and personal of Golden Star Creamery, Inc.; (2) that he would organize a new corporation; (3) that he would convey the property so acquired to it; (4) that he would issue 20 per cent. of the stock to plaintiffs for the $3,000 paid him and for other services of the plaintiffs; and (5) that the property when conveyed to the new corporation would be free from encumbrances except taxes.

Defendant objects to the last-numbered element because, he argues, it was too far separated from the rest by a semi-colon. On the other hand, plaintiffs say that the instruction was erroneous on that point because it was not necessary as a matter of law for them to prove more than the agreement of defendant to convey; that the law implies from such an agreement that the property shall be free from encumbrances. "In the absence of specific provision to the contrary, the vendor must convey a title which is free from encumbrances." 66 C. J. 903.

By instruction No. 7, also complained of by defendant, the court instructed the jury: "You are instructed that an agreement to convey land is in legal effect an agreement to convey a title to the land, and in the absence of a stipulation to the contrary the law implies an undertaking on the one conveying the same to make a good title clear of encumbrance." This instruction correctly states the law, and the other one (No. 6) favored defendant by requiring plaintiffs to prove that the agreement between

the parties was that the property was to be conveyed free of encumbrances.

There was no evidence of any stipulation or provision to the contrary as to the encumbrances on the property to be conveyed by defendant to the new corporation. Indeed, defendant testified that he never agreed to convey any property to it. The jury settled that question.

Defendant is willing to pay back the $3,000, but objects to the rest of the verdict.

"The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfilment of the contract would have prevented or the breach of it has entailed." 17 C. J. 847—citing *Schrandt v. Young,* 2 Neb. (Unof.) 546, 89 N. W. 607. This opinion was written by the late Judge George A. Day, then a commissioner of this court. See, also, *Western Union Telegraph Co. v. Wilhelm,* 48 Neb. 910, 67 N. W. 870, and *Diels v. Kennedy,* 88 Neb. 777, 130 N. W. 740.

Other errors are assigned, but we think they are covered by the preceding discussion. We find no prejudicial error. The judgment of the district court is

AFFIRMED.