## BENDIX HOME APPLIANCES, Inc., v. RADIO ACCESSORIES CO.

### No. 12172.

Circuit Court of Appeals, Eighth Circuit.

June 15, 1942.

Rehearing Denied July 9, 1942.

W. C. Fraser, of Omaha, Neb. (C. F. Connolly and Crofoot, Fraser, Connolly & Stryker, all of Omaha, Neb., on the brief), for appellant.

L. R. Newkirk, of Omaha, Neb. (C. L. Waldron and Waldron & Newkirk, all of Omaha, Neb., on the brief), for appellee.

Before GARDNER, THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The plaintiff and the defendant in the court below, the parties to an executory contract terminable at the will of either party, agreed that the contract should remain in force for a stated term in order that the plaintiff, which had sustained a loss through performance to the date of the amendment, might recoup its losses. The defendant wrongfully terminated the contract, and the plaintiff brought this suit to recover expenses incurred by it in performance of the contract both before and after the amendment and for the profits which the plaintiff claimed it would have earned but for defendant's default. At the conclusion of the testimony plaintiff was permitted to amend its pleadings to ask a recovery against defendant for the breach of a supplementary agreement which the parties executed after the breach

of the original contract. There was a judgment for the plaintiff for the breach of both the original and the supplementary contracts.

The questions presented on this appeal are: (1) whether the court has jurisdiction of the defendant in the suit, (2) the validity of the contract as originally drawn and as amended, and (3) whether the plaintiff may recover the particular items of damage for which judgment was rendered if there was a valid contract between the parties.

A jury was waived and the case was tried to the court. The testimony taken at the trial on the merits of the case is not brought into the record. On the question concerning the court's jurisdiction of the defendant, the record contains certain affidavits and exhibits, but it does not appear that these constituted all of the evidence upon which the court made its decision upon this question.

The trial judge made extended findings of fact which, in the circumstances just stated, are conclusive upon this court. From these findings we take the following statement of the case:

Radio Accessories Company, a Nebraska corporation with its principal place of business in the city of Omaha, and Bendix Home Appliances Incorporated, a Delaware corporation with its principal place of business in South Bend, Indiana, on the 6th day of May, 1938, entered into a written contract under which Bendix Incorporated granted to Radio Accessories the exclusive franchise for the wholesale distribution of Bendix Home Laundries in a number of counties in the states of Nebraska and Iowa, Bendix Incorporated reserving the right to change at will the extent of the territory described. Radio Accessories agreed to maintain a staff of trained personnel for the service of Bendix products in the territory allotted it; to repair and service free of charge for one year from the date of sale the Bendix machines sold by it or by its predecessor distributor; to maintain a service reserve fund in an amount satisfactory to Bendix Incorporated to defray the expense of rendering free service upon machines sold; upon the termination of the contract by either party to pay to Bendix Incorporated the proportion of unexpended service reserve fund allocable to each Bendix Home Laundry; and aggressively to advance the sale of the Bendix Home Laundries. Bendix Incorporated agreed to warrant to purchasers of home laundries that the machines were free from defects in material and workmanship under normal use and service, its obligation under the warranty being limited to repairing or replacing at its factory any machine or part which proved defective within one year from the date of installation.

It was expressly stipulated in the contract that Radio Accessories was not appointed an agent of Bendix Incorporated for any purpose whatsoever and that the contract was terminable at the will of either party, with or without cause. Radio Accessories did not agree to buy and Bendix Incorporated did not agree to sell any stipulated number of Bendix products. Radio Accessories agreed to pay promptly for all home laundries and parts delivered by Bendix Incorporated, but the latter was absolved from all claims whatsoever for failure to make delivery of the machines ordered. It was agreed that the contract should be interpreted and construed in accordance with the laws of Indiana.

At the time of the execution of the contract, M. E. Daily was the acting distributor of Bendix products at Omaha. Radio Accessories purchased from M. E. Daily his stock of Bendix laundries and parts and other material necessary to the sale of Bendix products. Radio Accessories took over the service on six laundries which had been sold by Daily. Daily released Radio Accessories and Bendix Incorporated from all claims against either of them. A written memorandum of this transaction was executed and signed by the representatives of the three parties involved.

The Bendix Home Laundry was relatively new and untried. It developed in the hands of purchasers a number of defects which Radio Accessories was required by the terms of the contract to correct at its own expense, subject only to the credit allowed it by Bendix Incorporated for defective parts under the warranty given the purchaser of each machine. From the outset the contract proved to be an expensive one for Radio Accessories. In response to its complaints, Bendix Incorporated sent employees into Nebraska, who inspected and repaired defective machines in the hands of users in the state, gave demonstrations to the owners of machines purchased and to the employees of Radio Accessories in the proper operation and maintenance of the machines, advised Ra-

dio Accessories in the purchase of parts from Bendix Incorporated for the repairs necessary and did what they could toward promoting the sale of Bendix Home Laundries. The net result of all operations, nevertheless, continued to be a loss for Radio Accessories.

In this state of affairs the president of Radio Accessories met the sales manager of Bendix Incorporated in Chicago during the latter part of July 1938, where, after a canvass of the situation, it was agreed that the contract between the parties should be amended to eliminate the provision permitting its termination at will by Bendix Incorporated, and to provide that Bendix Incorporated would continue the contract in full force and effect for one year from the date of its execution in order that Radio Accessories might have an opportunity to recoup the losses which it had sustained up to that time under the contract in giving free maintenance to machines sold.

On October 21, 1938, Bendix Incorporated wrongfully canceled the contract as amended and appointed a new distributor. Immediately thereafter the parties entered into another agreement, the substance of which was that Radio Accessories was to be paid for all Bendix sales and promotional material on hand; that its successor distributor would take over from Radio Accessories all parts in stock and pay for them; that any surplus money remaining in a cooperative advertising fund, after charging it with outstanding items, would be paid over to Radio Accessories; and that Bendix Incorporated would assume and pay all the expenses of a certain dealers' meeting, the arrangements for which had been made prior to the cancellation of the original contract.

In its petition for damages for breach of contract, Radio Accessories alleged the execution of the original contract between the parties, its amendment for a definite term, and that certain oral agreements between the parties prior to the signing of the written contract were made in supplement of the original contract and as a material part of the consideration for it. These oral agreements on the part of Radio Accessories were to discontinue the distribution of competitive products of other manufacturers in the territory allotted to it, and to purchase the laundries and parts in the hands of its predecessor distributor. On the part of Bendix Incorpo-

rated the oral agreements were to send a factory representative to assist Radio Accessories in promoting the sale of the Bendix Home Laundries and its assurance that the laundries purchased from the former distributor were free from defects. The alleged breach of the contract as originally executed was the failure of Bendix Incorporated to furnish the factory representative to assist plaintiff, and the fact that the machines purchased from plaintiff's predecessor proved to be so defective in the hands of purchasers as to oblige the plaintiff to expend large sums of money under the service clause of the original contract.

The plaintiff also averred that after the amendment of the original contract and in reliance upon defendant's agreement not to cancel, it incurred further expense under the service and maintenance clause of the contract in its efforts to promote the sale of Bendix Home Laundries. It declared that the amendment by which Bendix Incorporated agreed not to terminate the contract was made by Bendix Incorporated in recognition of the losses sustained by Radio Accessories in attempting to sell the home laundries and in order to "thereby afford plaintiff a means to recoup his losses and damages"; and that the cancellation by Bendix Incorporated on October 20, 1938 of the contract which had been amended on July 29, 1938, was made without just cause. The recovery of the expenses of plaintiff under the contract and the profits which the plaintiff would have made but for the cancellation of the contract was asked.

Bendix Incorporated, by a special appearance, moved to dismiss the petition on the ground that it had never engaged in business in the State of Nebraska within the meaning of the statutes of that state so as to authorize the service made upon it in the manner followed by the plaintiff in this case. The special appearance having been overruled, it filed an answer in which it admitted the execution of the original contract, denied the alleged amendment of July 29, 1938, admitted the cancellation of the contract on October 21, 1938, denied the breaches of contract alleged by the plaintiff, and averred that the contract sued on was void for want of mutuality, both before and after the supposed amendment. There was no answer to the amendment to the petition filed at the close of the trial.

The court awarded Radio Accessories a judgment in the sum of $6,007.29, of which amount $5,306.08 represented the expenses incurred by Radio Accessories for salaries and expenses of salesmen, servicemen, its general manager, and its vice-president from the date of the execution of the original contract until the date of its cancellation by Bendix Incorporated, with interest. The balance of the judgment, $701.21, was made up of items allowed under the supplementary contract executed by the parties after the date of the cancellation of the original contract.

■■ (1) The applicable statutes of Nebraska provide that service may be had upon a nonresident corporation engaged in business within the state by summons upon a managing agent of the corporation or upon the State Auditor of Public Accounts. Comp.Stat.Neb.1929, §§ 20-513 and 24-1201. In this case the service was attempted under both methods. The trial court was of the opinion that both were good. The activities of a foreign corporation which are sufficient to make it amenable to process within a state by service upon an officer of the state or upon the corporation may be less than those required to subject the corporation to the provisions of the state's licensing and taxation statutes. Liquid Veneer Corporation v. Smuckler, 9 Cir., 90 F.2d 196; International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Rendleman v. Niagara Sprayer Co., D.C.Ill., 16 F.2d 122; Wilson v. Hudson Motor Car Co., D.C.Neb., 28 F.2d 347. The Supreme Court of Nebraska has held in a late case that a corporation which does business in the State of Nebraska without qualifying under the Nebraska statute is subject to process served upon the Auditor of Public Accounts under the state statutes although the service is made after the corporation has ceased to do business in the state. Yoder v. Nu-Enamel Corp., 140 Neb. 585, 300 N.W. 840. And see Yoder v. Nu-Enamel Co., 8 Cir., 117 F.2d 488.

■ The jurisdiction of the court depends on whether the activities of Bendix Incorporated constituted doing business in the State of Nebraska. Although the contract between the parties did not create Radio Accessories an agent of Bendix Incorporated in the State of Nebraska, nevertheless, the work of the distributor as well as that of the employees of Bendix Incorporated, in making good the warranty to the individuals purchasing laundries, was to that extent the activity of Bendix Incorporated. But since the testimony at the trial was not brought into the record, we must assume that the evidence in the case was sufficient to support the decision of the lower court on the question of jurisdiction.

■■ (2) Contracts like the one under consideration are not pure sales contracts. They have some of the characteristics of agency and of factorage contracts. Marrinan Medical Supply Co. v. Fort Dodge Serum Co., 8 Cir., 47 F.2d 458. They have been developed to meet the needs of modern manufacturing and distribution. 4 Williston, Contracts, § 1027A. One purpose of the parties to them is the sale of the manufacturer's product, but the development of a market for the product and the exploitation of a sales territory by advertising and the solicitation of orders by salesmen are also involved. In such circumstances the parties cannot be explicit as to quantity or amount. And since agreements of the kind under discussion are in common use among business men, they are to be given a practical interpretation. Presumably they are entered into in good faith with the intention of performance in good faith by both parties. Courts are not inclined to hold them void for want of mutuality of obligation because the obligation of one party is imperfectly expressed, or even in the absence of any express statement of an obligation where the contracts are for a definite term. Marrinan Medical Supply Co. v. Fort Dodge Serum Co., supra; E. I. DuPont de Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238. "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (quoted in the opinion in the Marrinan case). If from the whole contract it is manifest that the parties intended that for an express obligation upon one of them there should be a corresponding obligation upon the other, the correlative obligation will be implied though not expressed. Marrinan Medical Supply Co. v. Fort Dodge Serum Co., supra.

■ But where the arbitrary and unrestricted right of cancellation is reserved to one or both parties, contracts like the one here are binding only to the extent that they have been performed. Since the contract is expressly made terminable at the will of either party, with or without cause,

it is not enforceable by either party. A demand for performance by one party may always be met by a repudiation of the whole contract by the other, the agreement between them furnishing the basis upon which the parties may deal with each other if they so desire, but with no obligation upon either requiring a continuation of relations. Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167; Ford Motor Co. v. Kirkmyer Motor Co., 4 Cir., 65 F.2d 1001; Willard, Sutherland & Co. v. United States, 262 U.S. 489, 43 S.Ct. 592, 67 L.Ed. 1086; E. I. DuPont de Nemours & Co. v. Claiborne-Reno Co., supra; Nebraska Aircraft Corp. v. Varney, 8 Cir., 282 F. 608; Huffman v. Paige-Detroit Motor Car Co., 8 Cir., 262 F. 116; Oakland Motor Car Co. v. Indiana Auto Co., 7 Cir., 201 F. 499; Fowler Utilities Co. v. Gray, 168 Ind. 1, 79 N.E. 897, 7 L.R.A.,N.S., 726, 120 Am.St. Rep. 344; Zelen v. Domestic Industries, Inc., 135 Neb. 456, 282 N.W. 387.

■ The contract as originally written was not enforceable by either party. The rights of the parties are not changed by the fact found by the court that Radio Accessories upon the faith of the contract incurred expenses or suffered loss in making preparations for distributing home laundries in the territory assigned to it. For it must be held to have entered upon performance with the knowledge that it had agreed that Bendix Incorporated might withdraw at any moment. It had the right to hope that the enterprise upon which it had embarked would prove profitable to both parties and that the relationship might continue to the benefit of both, but it had nothing more. In the event of the termination of the contract by Bendix Incorporated, Radio Accessories could not recover under the contract as originally written for any expenses it had incurred, nor for any loss of profit which it might have made had the contract remained in force.

■ We cannot agree with the contention of the plaintiff below, sustained by the trial court, that the representations made by the parties to each other prior to the execution of the written contract could be proved by parol evidence for the purpose of showing the real consideration of the contract. The considerations expressed in the contract sued upon are wholly contractual. In such cases parol testimony is not admissible to prove considerations other than those expressed in the contract.

Pickett v. Green, 120 Ind. 584, 22 N.E. 737; Conant v. National State Bank, 121 Ind. 323, 22 N.E. 250; Wells v. Aufrecht, 96 Neb. 402, 147 N.W. 1125; Hartman v. Lipovsky, 122 Neb. 823, 241 N.W. 563; Dawson County State Bank v. Durland, 114 Neb. 605, 209 N.W. 243. But if prior promises on behalf of the parties could be proved in the present case as a part of the consideration of the contract, they could be of no avail to either party because either party, by exercising its right to terminate the contract, could have avoided performance of them.

■ The trial court also held that the written warranty which Bendix Incorporated gave to the original purchaser of a home laundry was a part of the contract between Bendix Incorporated and Radio Accessories. But by its very terms the obligations of this warranty ran only to the original purchaser of a home laundry and to no one else, and the court's holding in this respect was clearly erroneous. It is true that the court denominated its holding a finding of fact, but the matter involved was the construction of the contract, a question of law. Its inclusion within the court's finding of fact is not determinative of its real nature nor is it binding upon this court. Lambert Lumber Co. v. Jones Engineering & Construction Co., 8 Cir., 47 F.2d 74.

■ We conclude, however, that the contract as amended was valid and binding upon the parties. Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 8 Cir., 112 F.2d 101, citing the Marrinan Medical Supply Co. and the E. I. DuPont de Nemours & Co. cases. The situation of the parties after the amendment was in all respects as if the amended contract was the first and only agreement between them. The trial court found that the amendment was made for the specific purpose of enabling the plaintiff below to recoup the losses which it had sustained prior to the amendment. The Bendix Home Laundries had been improved and perfected, and the parties in recognition of the loss sustained by the plaintiff in trying to sell the original imperfect model, agreed to continue the contract in force for a definite term in order that the distributor might recover its prior losses and possibly make a profit. The contract as amended was not void for want of mutuality of obligation, under the authorities cited above, because of uncertainty as to the number of home laundries

to be sold nor because by the amendment Radio Accessories was not expressly denied the right to terminate at will. The facts concerning the amendment to the contract as found by the court clearly imply the intention of the parties that both should be obligated for the term agreed upon. Marrinan Medical Supply Co. v. Fort Dodge Serum Co., supra.

It follows that Bendix Incorporated was liable to Radio Accessories for the damages caused by the wrongful cancellation of the amended contract. The measure of this damage was the reasonable expenditure of Radio Accessories in performance, less any amount received by Radio Accessories for performance, plus any profit which Radio Accessories would have earned had the contract not been terminated. Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., supra; United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; White River Levee District v. McWilliams Dredging Co., 8 Cir., 40 F.2d 873; Michelson, Inc., v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597, 601; Elvidge v. Brant, 131 Neb. 1, 267 N.W. 169; International Text-Book Co. v. Martin, 82 Neb. 403, 117 N.W. 994; Lowe v. Turpie, 147 Ind. 652, 670, 44 N.E. 25, 47 N.E. 150, 37 L.R.A. 233.

(3) The judgment for breach of the original contract must be reversed because plaintiff below was granted a recovery for its expenses incurred both before and after the amendment. At the time of the amendment, the plaintiff had no cause of action on the contract for expenses incurred in promoting the sale of the defendant's products. The amendment was made for the specific purpose of enabling the plaintiff to recoup the expenses which it had incurred prior to the amendment and for which it had no cause of action on the contract. It was necessary, therefore, that the plaintiff realize a profit under the contract as amended, in order to recover its past expenditures. It was incumbent upon the plaintiff in a suit for damages for breach of the contract as amended to show with reasonable certainty that but for the breach on the part of the defendant it would have recouped the expenditures made prior to the amendment, by profits earned after the amendment. There is no finding to this effect by the trial court. But the trial court found that the evidence was insufficient to show that the plaintiff would have made any profit under the amended contract, had it not been canceled by the defendant. The action of the trial court in awarding a judgment to the plaintiff below for expenses incurred prior to the execution of a valid contract between the parties is in direct conflict with its finding of fact. Since it is impossible under the record before us to separate the expenses incurred by the plaintiff before the amendment from those incurred afterwards, the judgment upon the original contract as amended must be reversed and remanded for further proceedings.

The judgment upon the supplementary contract is affirmed upon the court's finding that the contract was breached by the defendant and that the plaintiff sustained the damages allowed.