CAVANAUGH et al. v. FIREMAN'S FUND INS. CO.

Civ. No. 77–50.

United States District Court
D. Nebraska, Omaha Division.

Sept. 18, 1951.

Einar Viren and John R. Swenson (of Swenson, Viren & Turner), Omaha, Neb., for plaintiffs.

John L. Barton and Thomas C. Quinlan (of Brown, Crossman, West, Barton & Quinlan), Omaha, Neb., and David J. Kadyk, Chicago, Ill., for defendant.

DONOHOE, Chief Judge.

This is an action by Glenn L. Cavanaugh and Mary Evalyn Cavanaugh, both citizens of Nebraska, individually and as co-partners, against Fireman's Fund Insurance Company, a California Corporation, for an accounting under the terms of a contract entered into by and between the parties. Jurisdiction is based upon diversity of citizenship. 28 U.S.C.A. § 1332(a)(1). At the close of the plaintiffs' case in chief, defendant moved that the case be dismissed on the ground that plaintiffs have failed to establish a right to an accounting. Since this action has been tried to the Court without a jury, the Court, at this time, as authorized by Rule 41(b), F.R.C.P., 28 U.S.C.A., makes the following special

Findings of Fact.

Plaintiffs are a co-partnership consisting of Glenn Cavanaugh and Mary Evalyn Cavanaugh, husband and wife. Both partners have been engaged in the insurance business for at least twenty-five years. Prior to March 1, 1948, plaintiff partnership, hereinafter referred to as the Cavanaugh Company, had a general agency contract with the Home Insurance Company

which was, for many years prior to 1948, the only company represented by the Cavanaugh Company.

The Home Insurance Company served notice on plaintiff partnership that on March 1, 1948, the partnership's general agency contract with the Home Insurance Company would be cancelled. When this notice was served Mr. Cavanaugh became concerned about the future of the partnership business. He went to New York City where he attended a general meeting of the Home Insurance Company and discovered among other things, that a merger was to take place and that the Home Insurance Company was establishing a policy of *discontinuing all its general agencies.* When he returned from New York, Mr. Cavanaugh discussed with his wife the possibility of withdrawing from the general agency business. In this connection he contacted a business acquaintance named Lawson, who was at that time manager of the Fireman's Fund Insurance Company, a California corporation. Mr. Cavanaugh felt that the Fireman's Fund Insurance Company might be interested in purchasing the Cavanaugh Agency because this agency had for some years past sold policies similar to those underwritten by the Fireman's Fund Insurance Company and this Company did not have any established agency in Nebraska and Kansas.

On the 18th day of February, 1948, plaintiff partners opened negotiations in Chicago, Illinois, with the defendant, Fireman's Fund Insurance Company; and the results of these negotiations were then merged into a written contract which, on February 20, 1948, in Chicago, Illinois, was voluntarily signed by both plaintiff partners, Glenn and Mary Evalyn Cavanaugh, on the one side, and by Mr. Lawson for the Fireman's Fund Insurance Company, on the other side. This agreement reads as follows:

"Interim Memorandum of Agreement pending drawing up and mutual acceptance of Final Agreement between Glenn L. Cavanaugh and Mary Evalyn Cavanaugh, a co-partnership, doing business as The Cavanaugh Co., hereinafter referred to as the Agent and the Fireman's Fund Insurance Company of California, hereinafter referred to as the Company.

"The Agent having previously operated as a General Agent for the states of Kansas and Nebraska, writing Fire and Allied Lines, Automobile and Inland Marine is retiring from the general agency business as such and wishes to sell and the Company wishes to purchase all of his right, title, interest, good will, etc. in the Agent's sub-agency plant, as set forth in attached schedule, in these two states.[1]

"The Agent will assist wherever possible in the conversion of these local agencies to the Company's representation, though this does not contemplate the contracting for the Agent's personal services, the extent to which services will be rendered by the Agent being solely at the Agent's discretion.

"The Agent also agrees to assist in effecting the transfer to the Company's employ any of the Agent's employees who are desired by the Company and who are willing to make the transfer at compensation to such employees as may be agreed upon.

"The Agent will assign to the Company lease for office, Rooms Nos. 1235–40, incl., on the 12th Floor of the City National Bank Building, subject to the terms thereof but does not assign Room 1229 covered as an addendum to the same lease.

"Such furniture, fixtures and equipment as are required by the Company will be purchased from the Agent at a price to be agreed upon.

"The Company assumes no obligation to either local agents or other companies for any acts of the Agent in the capacity of General Agent, nor will this Company be responsible for any expenses, or debts incurred by Agent whether before or after date of this Agreement, without prior written consent of Company.

"The effective date of this agreement shall be as to business written arising out of

---

1. These schedules were not introduced in evidence with the agreement and have no particular significance in connection with the present case.

this Agreement attaching as of March 1st, 1948 and thereafter.

"The consideration for this Agreement shall be a contingent commission to be paid by the Company to the Agent and to be calculated on formula hereinafter set forth for a period of five years from the date hereof. At the end of each fiscal year, a contingent commission statement shall be prepared by the Company, covering such insurances as may be accepted by the Company emanating from the agencies set forth in the attached schedule, including successor agencies thereto. 'Successor agencies' shall not be deemed to include agency appointments made independently of original connections set forth in the attached schedule.

"After the 5th. annual statement has been rendered, this Agreement is terminated and no further compensation shall be due the Agent. Full consideration having been paid and the terms of this agreement having been discharged, the business shall be the sole property of the Company without further payment.

"In consideration of this Agreement, the Agent will not engage in general agency business competitive to the subject hereof, or except with the written consent of the Company.

"Formula.

"Credits.

"1. 100% of the net (gross less returns) earned premiums of the year for which contingent commission is being calculated.

"2. Outstanding losses (if any) at beginning of current contingent year.

"Debits.

"1. Losses paid during the current contingent year (less salvages recovered).

"2. Losses outstanding at close of current contingent year.

"3. Loss expenses paid.

"4. All commissions paid to local agents.

"5. For all expenses other than actual commissions a fixed charge of 17½% of net premiums of current year.

"6. Deficit, if any, carried over from previous year.

"The excess of Debits over Credits establishes a deficit to be carried forward to the next year.

"The excess of Credits over Debits shall establish a net profit on which contingent commission shall be paid at the rate of 20%.

"It is agreed that contingent commission paid hereunder shall not be treated as an agency expense in computing the contingent commission of any subsequent year." [2]

On November 1, 1948, the defendant insurance company prepared and forwarded to the Cavanaugh partnership an amendment to the interim memorandum of agreement which, among other things provided:

"The above Interim Memorandum of Agreement was executed pending drawing up and mutual acceptance of Final Agreement. This amendment of the Interim Memorandum of Agreement is to convert said Interim Memorandum of Agreement into a Final Agreement in accordance with the conditions outlined therein and said Interim Memorandum of Agreement as amended hereby constitutes the Final Agreement between Glenn L. Cavanaugh and Mary Evalyn Cavanaugh, a copartnership doing business as the Cavanaugh Company hereinafter referred to as the Agent and the Fireman's Fund Insurance Company of California hereinafter referred to as the Company."

\*    \*    \*    \*    \*    \*

"Only premiums paid to the Fireman's Fund Insurance Company, the Home Fire & Marine Insurance Company, or the Western National Insurance Company are to be used in the computation of this contingent commission for only those classes of business which these companies are presently licensed to write in the states of Kansas and Nebraska. All premiums written in the Fire, Marine, Farm, Hail and Auto (excluding Indemnity Company premiums) are to be grouped as one item in the computation of the contingent commission. Premiums paid to the Fireman's Fund Indemni-

2. Exhibit 1.

ty Company or the Western National Indemnity Company for liability accepted by those companies are not to be considered in computing the contingent commission referred to in this agreement.

"The payments called for in this Agreement shall be due and payable and payment made thereon as soon after the completion of the first anniversary and the second, third, fourth and fifth anniversary of this Agreement, as is possible for the company to complete its bookkeeping transactions and to submit the statements to the agent, together with the payment called for therein.

"The Company shall make available in its Omaha Office all premium and loss figures as are usually supplied to the Company Field Office for all agencies included in the attached lists and these figures are to be made available for inspection or review by the agent." [3]

This amendment to the interim agreement was voluntarily signed by Glenn and Evalyn Cavanaugh on November 3, 1948, in Omaha, Nebraska. It was returned to the defendant insurance company for final execution and on November 5, 1948, in Chicago, Illinois, Mr. Lawson signed the amendment for and on behalf of the defendant company. Reading the instruments in their entirety, the Court does not find the contract, or any part thereof which is material to this action, ambiguous or subject to more than one construction.

On February 28, 1949, the defendant insurance company in accordance with the contract mentioned above, prepared and forwarded to the plaintiffs the following contingent commission statement:

"Fire & Tornado Contingent Commission Account
For the Year beginning March 1, 1948, and
ending Feb. 28, 1949.

"Income:

| | | | |
|---|---|---|---|
| 1. Net Earned Premiums in Western Department Territory (Gross Less Returns) | | | |
| Net Premiums Written | | 226,818.95 | |
| Deduct: | | | |
| Reserve for Unearned Prems., 2–28–49 | | 139,473.48 | |
| Net Earned Premiums | | | 87,345.47 |
| 2. Outstanding losses at beginnning of year | | | 0 |
| Total Income | | | 87,345.47 |

"Disbursements:

| | | | |
|---|---|---|---|
| 1. Losses paid (less salvages recovered) | | 22,611.99 | |
| 2. Losses outstanding at end of year | | 9,178.00 | |
| 3. Loss expenses paid | | 1,555.74 | |
| 4. Commissions paid to agents | | 50,940.72 | |
| 5. Fixed charges for expenses other than Commissions—17½% of net premiums written | | 39,693.32 | |
| 6. Deficit carried forward from previous year | | 0 | |
| Total Disbursements | | | 123,979.77 |
| "Deficit | | | –36,634.30 |

3. Exhibit 2.

## "Automobile Contingent Commission Account
### For the Year beginning March 1, 1948, and ending Feb. 28, 1949

"Income:
1. Net Earned Premiums in Western Department Territory (Gross less returns)

| | | |
|---|---:|---:|
| Net Premiums Written | 42,235.34 | |
| Deduct: | | |
| Reserve for Unearned Prems., 2–28–49 | 18,785.85 | |
| Net Earned Premiums | | 23,449.49 |
| 2. Outstanding Losses at beginning of year | | 0 |
| Total Income | | 23,449.49 |

"Disbursements:

| | | |
|---|---:|---:|
| 1. Losses paid (less salvages recovered) | 5,729.16 | |
| 2. Losses outstanding at end of year | 1,729.00 | |
| 3. Loss expenses paid | 347.42 | |
| 4. Commissions paid to agents | 10,558.84 | |
| 5. Fixed charge for expenses other than Commissions—17½% of net premiums written | 7,391.18 | |
| 6. Deficit carried forward from previous year | 0 | |
| Total Disbursements | | 25,755.60 |
| "Deficit | | –2,306.11 |

## "Marine Contingent Commission Account
### For the year beginning March 1, 1948, and ending Feb. 28, 1949

"Income:
1. Net Earned Premiums in Western Department Territory (Gross less returns)

| | | |
|---|---:|---:|
| Net Premiums Written | 10,987.24 | |
| Deduct: | | |
| Reserve for Unearned Prems., 2–28–49 | 5,610.12 | |
| Net Earned Premiums | | 5,377.12 |
| 2. Outstanding Losses at beginning of year | | 0 |
| Total Income | | 5,377.12 |

"Disbursements:

| | | |
|---|---:|---:|
| 1. Losses paid (less salvages recovered) | 425.00 | |
| 2. Losses outstanding at end of year | 370.00 | |
| 3. Loss Expenses paid | 147.05 | |
| 4. Commissions paid to agents | 2,032.44 | |
| 5. Fixed charges for expenses other than Commissions—17½% of net premiums written | 1,922.77 | |
| 6. Deficit carried forward from previous year | 0 | |
| Total Disbursements | | 4,897.26 |
| "Net Profit | | 479.86 |

## "Hail Contingent Commission Account
### For the year beginning March 1, 1948, and ending Feb. 28, 1949

"Income:
1. Net Earned Premiums in Western Department Territory (Gross less returns)
   Net Premiums Written—100% earned ............ 188,194.48
2. Outstanding losses at beginning of year ........ 0

   Total Income ........................................ 188,194.48

"Disbursements:

| | | |
|---|---|---|
| 1. Losses paid (less salvages recovered) | 92,232.54 | |
| 2. Losses outstanding at end of year | 0 | |
| 3. Loss Expenses paid | 9,365.85 | |
| 4. Commissions paid to agents | 32,209.92 | |
| 5. Fixed charge for expenses other than Comm.—17½% of net premiums written | 32,934.03 | |
| 6. Deficit carried forward from previous year | 0 | |
| Total Disbursements | | 166,742.34 |

"Net Profit ............................................ 21,452.14

### "Recapitulation

| "Lines of Business | Net Profit or —Deficit |
|---|---|
| Fire | –36,634.30 |
| Automobile | - 2,306.11 |
| Marine | 479.86 |
| Hail | 21,452.14 |
| Total (Deficit) | –17,008.41 |
| Amount Due at 20% of Net Profits | None" |

This statement was received, but not accepted by the plaintiffs, who formally objected to it on the ground that it was not prepared in accordance with the formula set forth in the agreement. A second contingent commission statement,[4] prepared in the same manner as the first, but involving, of course, different figures, was forwarded to plaintiffs shortly after the close of the fiscal year ending February 28, 1950. The plaintiffs refused to accept this statement for the same reason that they refused to accept the first. And the third contingent commission statement [5] prepared by the defendant for the fiscal year ending February 28, 1951, was also refused for this same reason.

#### Discussion.

Plaintiffs do not deny the validity of the contract hereinbefore set out, but, in fact, rely upon it as the basis for relief in this action. This contract requires the defendant to forward annually to plaintiffs statements showing the contingent commissions, if any, due to plaintiffs; and these commissions are to be computed according to the formula set forth in the contract. This formula is a simple expression of the universal accounting practice of offsetting

4. Answer—C, D, E, F; Exhibit 7.

5. Answer—C-2, D-2, E-2, F-2; Exhibit 8.

"debits" against "credits" for the purpose of ascertaining whether a gain or loss has resulted, with the additional factor that the contingent commission shall be 20% of the profit, if there is any.

It is clear that the statements forwarded to the plaintiffs accurately set forth the debit items. to be used in this formula for the years in question. The plaintiffs have introduced no evidence to the contrary and themselves use the debit figures contained in the defendant's statements to compute the contingent commission due. Exhibit 9.

■ The dispute arises in connection with a single item on the "credit" side of the formula. (There are only two items on the credit side of the formula and there is apparently no dispute as to item number 2, outstanding losses, if any, at the beginning of current contingent year.) The formula provides that the defendant shall credit—"1. 100% of the net (gross less returns) earned premiums of the year for which contingent commission is being calculated."

The Court does not find this particular portion of the formula, as read in conjunction with the entire contract, to be in any sense ambiguous; consequently, since the contract is valid and complete, and since there is no contention of fraud, accident or mistake, parol evidence has not been admitted to explain the meaning of terms set forth above. Cf. Maryland Casualty Co. v. United States, 8 Cir., 1948, 169 F.2d 102, 110; Dawson County State Bank v. Durland, 114 Neb. 605, 209 N.W. 243; Walter v. Sohio Petroleum Co., 402 Ill. 33, 83 N.E.2d 346; 32 C.J.S., Evidence, § 851 et seq.

■ Plaintiffs contend that the contingent commission was to be figured on the net premiums written. This position is obviously in conflict with the express provisions of the formula which requires the inclusion of only the net *earned* premiums of the year for which the computation is being made. To accept plaintiffs' position the Court would have to strike from the contract, or at least disregard, the term "earned" which modifies the noun "premiums". This, the Court has no authority to do. ·

■ An "earned premium" has been defined as the difference betwen the premium paid by the insured and the portion returnable to him by the insurance company on cancellation of the policy during its term. Ætna Insurance Company v. Hyde, D.C. Mo., 1929, 34 F.2d 185; 44 C.J.S., Insurance, § 340, p. 1303, n. 29, citing Ætna Insurance Co. v. Travis, 121 Kan. 802, 257 P. 337, affirmed 124 Kan. 350, 259 P. 1068. The complimentary term "unearned premium" is defined in Black's Law Dictionary (3rd Ed.), p. 1404, as that portion of the premium which must be returned to the insured upon cancellation of the policy. See Hardware Mutual Fire Insurance Co. v. Stinson, 210 N.C. 69, 185 S.E. 449. Though specific statutes may shade the meaning of these terms very slightly, Cf. Section 991, Illinois Insurance Code of 1949, S.H.A. ch. 73, § 991, it seems clear that in general the terms are not ambiguous. Further, it is absolutely incredible, that plaintiffs, who had over twenty-five years experience in the insurance business, understood the term "net earned premiums", as used in the contract, to be synonymous with the term "net premiums written."

■ The amendment to the interim agreement did not alter item one on the credit side of the formula to require a credit of 100% of the net premiums written. The provision in paragraph three of the amendment that "All premiums written in the Fire, Marine, Farm, Hail and Auto (excluding Indemnity Company premiums) are to be grouped as one item in the computation of the contingent commission." does not change the fact that only the *earned* part of the premiums written are to be considered, but merely makes it clear that the contingent commission of 20% is to be applied to the sum of all the classes (thus losses in one or more classes may offset gains in other classes), and not applied separately to each class.

In the annual statements prepared by the defendant and forwarded to plaintiffs there is set forth figures representing the net premiums written, which figures have been

accepted by plaintiffs. In computing the figure for item one on the credit side of the formula (i. e. net premiums earned) the defendant has, in effect, subtracted from the net premiums written a sum equal to the unearned premium reserve which represents the unearned portion of the premiums. The plaintiffs object to this. They do not, however, contend, nor have they introduced any evidence to show, that the unearned portion of the premium has been improperly or inaccurately computed; but they stand upon the proposition that item one, on the credit side of the formula calls for the inclusion of the entire net premiums written during the year without any deduction for the unearned portion. See Exhibit 9. For the reasons heretofore stated, this position is contrary to the express provisions of the contract.

The plaintiffs have failed to show that the defendant has not properly accounted in accordance with the contract. The evidence before the Court indicates that the statements, all three of them, forwarded by the defendant to plaintiffs, were properly prepared in accordance with the contract provisions. Consequently, defendant's motion to dismiss must be sustained.

Counsel for defendant shall prepare and submit for approval the appropriate judgment to be entered in keeping with this memorandum.